# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-DR-00708-SCT

*HENRY CURTIS JACKSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/14/1991 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR PETITIONER: | DAVID P. VOISIN |
| | ROBERT RYAN |
| ATTORNEY FOR RESPONDENT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | PETITIONS FOR POST-CONVICTION COLLATERAL RELIEF, DENIED - 08/07/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Henry Curtis Jackson, Jr., was convicted in the Leflore County Circuit Court in 1991 of capital murder and sentenced to death for the stabbing deaths of four children, his nieces and nephews. This Court affirmed his conviction and sentence on direct appeal. ***Jackson v. State***, 684 So.2d 1213 (Miss. 1996), *rehearing denied,* 691 So. 2d 1026 (Miss. 1996), *cert.*

*denied,* 520 U.S. 1215 , 117 S. Ct. 1703, 137 L.Ed. 2d 828 (1997).[1]  Jackson has filed a Petition

for Post Conviction Relief in the Circuit Court of Leflore County and an application for leave

to file motion to vacate conviction and/or death sentence which are presently before this

Court.  His petition and application are denied.

## FACTS

¶2.     Jackson murdered four children, two of his nieces and two of his nephews, in an attempt

to steal money kept in his mother's safe in her home.[2]  On the evening of November 1, 1990,

Jackson's mother, Martha, and four of her older grandchildren went to church.  Martha's

daughter, Regina Jackson, stayed  home with her two daughters, five-year-old Dominique

---

[1] Jackson's attorney at trial and on direct appeal did not file a petition for rehearing; and the original opinion was published as *Jackson v . State*, 672 So.2d 468 (Miss. 1996).  Jackson acquired new counsel who was granted permission to file an out-of-time petition for rehearing. This Court denied the petition and substituted the original opinion with a new one, cited above.  *Jackson v. State*, 684 So.2d 1213 (Miss. 1996). In May of 1998, Jackson's counsel then filed an Application for Leave to File Petition for Uniform Post Conviction Collateral Relief, a supporting memorandum, and the proposed petition, a motion for payment of reasonable litigation expenses and two brief evidentiary supplements to the initial pleadings.  Ultimately, this Court issued an opinion holding that indigent death-sentenced inmates are entitled to the appointment of counsel for post-conviction collateral appeals.  *Jackson v. State*, 732 So. 2d 187 (Miss. 1999). Jackson's counsel then assumed the position as the newly formed Mississippi Office of Capital Post-Conviction Counsel; and this Court assigned him to Jackson's case.  Counsel, however, had to withdraw due to a conflict of interest, as counsel represented Jackson in connection with his direct appeal, namely the Petition for Rehearing; and under M.R.A.P  22(d)(4), post-conviction counsel must not have represented the capital petitioner "in the direct appeal" unless "the petitioner and counsel expressly request continued representation and waive all potential issues that are foreclosed by continued representation."  Ultimately, counsel was removed from the case; and other attorneys at the Office of Capital Post-Conviction Counsel were imputed and disqualified under the professional rules.  Miss. Rules of Professional Conduct 1.10(a).  Then, Jackson's counsel resigned from the Office, therefore removing the conflict imputation.  The Office was then re-appointed to represent Jackson, and on November 1, 2002, the present Petition for Post-Conviction Relief was filed.  This Petition incorporates all of the prior pleadings filed on Jackson's behalf in 1998, including the Application for Leave to File Motion to Vacate Judgment and Sentence, the Memorandum in support thereof, the 1998 Application for Leave to File Petition for Uniform Post Conviction Collateral Relief, and the First and Second Supplements to the Record to said 1998 Petition.

[2] The facts are summarized from those as set forth in this Court's opinion in Jackson's direct appeal. *Jackson v. State*, 684 So.2d 1213 (Miss. 1996).

2

whom Jackson murdered that night, two-year-old Shunterica whom Jackson murdered, and four other of their nieces and nephews, three-year-old Antonio whom Jackson murdered and two-year-old Andrew whom Jackson murdered, and eleven-year-old Sarah and one-year-old Andrea who were severely injured during these murders but survived.

¶3.     While Regina and the children were at the house watching television, Jackson parked his car two blocks away, walked to the house, and cut the outside telephone line. He then knocked on the door and was allowed inside. While inside, he picked up the phone and indicated it was not working. Regina headed to a neighbor's house to place a call to check the phone. Before going very far, Jackson told Sarah to call Regina back. Regina came back in and, followed by her daughter Shunterica, sought Jackson in the kitchen. Jackson told Regina to take Shunterica back into the television room. She did so and upon her return to the kitchen Jackson grabbed her from behind. With one hand around her neck and one around her waist, he walked her down the hall to the boys' room. He asked for her paycheck. Regina told him she had no money. Jackson then asked for the combination to his mother's safe. When Regina said she did not know it, he pulled out knives and shoved them into her throat and waist. Regina yelled for eleven-year old Sarah, who came running and jumped on Jackson's back. The three struggled, during which Jackson told him that he had to kill them. Sarah begged him to just get the safe and leave.

¶4.     Meanwhile, the smaller children had followed Sarah down the hall, and Jackson called them into the room where they obediently remained. He then took Regina into an adjacent room and tried to open the footlocker where he believed the combination to the safe was kept. Jackson then began stabbing Sarah in the neck, then took Regina and Sarah into the boys' room

where he tried to tie them up. Regina, who had already been stabbed several times, picked up some iron rods that Jackson had brought in from the bathroom, and started hitting him with them. Jackson then went and picked up the baby, one-year old Andrea, and used her as a shield. Regina relinquished the rods and let him tie her up with a belt. He stabbed her again in the neck. While Regina watched, Jackson picked up her daughter, two-year old Shunterica, by the hair, stabbed her, killed her, and laid her on a bed.

¶5.     While Regina and Sarah were struggling to stay alive, Jackson started dragging the safe down the hall which awakened five-year old Dominique. Dominique came down the hall calling for her mother, at which time, as Regina testified, Jackson told Dominique that he loved her, but then stabbed her, killed her  and threw her on the floor. After killing Dominique, Jackson walked over to Regina and again shoved a knife in her neck.  Regina then pretended she was dead.

¶6.     Sarah tried to comfort her baby sister, Andrea, and told three-year old Antonio to run for help. Jackson called Antonio back. Regina had fainted by this time and Jackson was trying to wake her up. He then grabbed Sarah again and began stabbing her in the neck. After the knife broke off in her neck, he ran to the kitchen, retrieved another knife, stabbed her again and threw her on a bed. Sarah, too, then pretended she was dead. She heard Antonio yelling for help and saw Jackson kneeling over him.  While Sarah did not actually see Jackson stabbing him, she testified that " I saw his hand moving when he was over him. I didn't see but I knew he was doing something cause my little brother was hollering." She likewise did not witness the stabbing of two-year old Andrew, but when she saw him, "[h]e was on the bottom of the bed and his eyes were bulging and his mouth was wide open."  Sarah was able to jump from the bed and escape

4

out the front door. She hid behind a tree across the street and watched as Jackson came outside, looked around, and went back inside.

¶7. Upon Jackson's last view of the room, Regina and Andrea appeared dead, and the four children, five-year-old Dominique, three-year-old Antonio, two-year-old Shunterica and two-year-old Andrew, were all dead.

¶8. Shortly after the murders, Angelo Geens, Martha Jackson's cousin and neighbor, returned to his home at about 8:30 p.m. Sarah ran to him from where she had been hiding and told him that Regina and the others were in the house and that her uncle Jackson had killed them all. Geens carried her into his house and called the police and an ambulance. Deputy Sheriff J.B. Henry and Deputies Tindall, Berdin and Fondren arrived at the scene and discovered the bodies of the four children. Leflore County Coroner James R. Hankins pronounced the four children dead at the scene. From the house, the bodies of Shunterica, Dominique, Andrew, and Antonio were sent to the Deputy State Medical Examiner for forensic pathology examinations.

¶9. Meanwhile, Jackson had become the subject of an extensive manhunt. While still at the Jackson residence, Deputy Sheriff Tindall received a call from the Highway Patrol regarding a wrecked car in Eupora just fifty yards from the site where the Eupora Police Department had been conducting a routine license check. The car, a 1977 green Monte Carlo, bore a license tag registered to Martha Jackson's 1973 brown Ford station wagon. A wallet containing Jackson's identification was found on the front console, and his own license tag as well as a long, dark trench coat were found in the trunk. Jackson had abandoned the car when he saw the

5

roadblock and took off a foot. Eluding police, Jackson jumped a train from Eupora to West Point.

¶10. On Monday morning, November 5, 1990, Jackson turned himself in to the West Point Police Department. Jackson gave a statement to Leflore County Sheriff Ricky Banks, who had been summoned to West Point. Jackson stated that, knowing his mother would be at church, he had gone to her house to get the safe because he needed more money to pay his bills. He had brought a kitchen knife with him that was in the car and when he heard someone in the house, went around the back to cut the telephone line. After stabbing Regina and the children, he tried to move the safe and to find a second safe she had mentioned. Noticing lights at the house across the street, he then climbed out the bathroom window and fled to his car.

¶11. Dr. Steven Hayne, who performed autopsies on the children, testified that Shunterica suffered three stab wounds to the neck and two shoulder abrasions. Her jugular vein was severed, leading Dr. Hayne to opine that she ultimately bled to death. Andrew sustained three stab wounds to the neck. The first cut through the carotid artery and the jugular vein. Another missed the trachea, but went into his backbone and severed the spinal cord. Dr. Hayne opined that such an injury "would require a considerable amount of strength" and noted the presence of a pinpoint hemorrhage caused by force on the child's neck. Dominique, too, died of multiple stab wounds to the neck. Three of the four stab wounds cut her jugular vein and trachea. Antonio suffered four stab wounds and two slash wounds which cut through his trachea. Dr. Hayne determined, however, that Antonio died from a stab wound that cut through his heart.

¶12. Sarah underwent surgery for five serious stab wounds to her abdomen, chest and neck, including a lacerated windpipe. Regina suffered five stab wounds to her neck. One-year-old

6

Andrea suffered a single penetrating stab wound to her neck which caused a tracheal injury and severely damaged her spinal cord. As a result, she is unable to walk and has no fine motor control in her arms.

¶13.   On March 12, 1991, Jackson was indicted on four counts of capital murder, two counts of aggravated assault and one count of armed robbery by a grand jury of the Leflore County Circuit Court. Under counts one through four, Jackson was charged with the deaths of two-year-old Shunterica, five-year- old Dominique, three-year-old Antonio and two- year-old Andrew.  In each count, Jackson was charged with killing while engaged in the commission of the crime of felonious abuse and/or battery of a child in violation of Section 97-5-39(2), Mississippi Code Annotated of 1972, as amended, or in any attempt to commit such felony; in violation of Section 97-3-19(2), Mississippi Code Annotated of 1972, as amended. Counts five and six charged Jackson with the armed robbery of Regina Jackson and with "unlawfully, wilfully, feloniously and purposely caus[ing] bodily injury to Regina Jackson, a human being, by stabbing said Regina Jackson with a deadly weapon, to wit: a knife." Under Count seven, Jackson was likewise  was charged with the stabbing of Sarah. Jackson was arraigned on April 29, 1991, and entered pleas of not guilty on all seven counts of the indictment.

¶14.   Trial was set for August 26, 1991.  During voir dire, Jackson's attorney and the court questioned the jurors regarding their exposure to the media coverage of the murders, especially during the days immediately before the trial.  Based on the responses, the court advised Jackson's attorney that if he sought a change of venue it would be considered. On August 29, 1991, the court entered an order changing venue to Copiah County and setting the trial for September 9, 1991. The Copiah County jury found Jackson guilty on all seven counts

7

and sentenced him to death on each of the four capital murder counts. On direct appeal we affirmed Jackson's conviction and sentence. ***Jackson v. State***, 684 So.2d 1213 (Miss. 1996), *rehearing denied,* 691 So. 2d 1026 (Miss. 1996), *cert. denied,* 520 U.S. 1215, 117 S. Ct. 1703, 137 L.Ed. 2d 828 (1997)

¶15.    Jackson collectively raises in his petition and application twenty alleged violations of his federal and state constitutional rights.  Duplicative claims are incorporated accordingly.

### STANDARD OF REVIEW

¶16.    Under the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2000 & Supp. 2002), post-conviction review "provide[s] prisoners with a procedure, limited in nature, to review only those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal." *Id*. § 99-39-3(2) (Supp. 2002); ***Cabello v. State,*** 524 So.2d 313, 323 (Miss. 1988). When claims which could have been but are not presented to the trial court or to the Supreme Court on direct appeal, the claims will not be heard on post conviction review absent cause and actual prejudice. ***Lockett v. State***, 614 So.2d 888, 893 (Miss. 1992). Additionally,  "[t]he doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal."  Miss. Code Ann. § 99-39-21(3) (Supp. 2002). In ***Lockett***, this Court reiterated:

> The procedural bars of waiver, different theories, and *res judicata* and the exception thereto as defined in Miss. Code Ann. §§ 99-39-21(1-5) are applicable in death penalty PCR Applications. ***Irving v. State***, 498 So.2d 305 (Miss.1986); ***Evans v. State***, 485 So.2d 276 (Miss.1986). Rephrasing direct appeal issues for post-conviction purposes will not defeat the procedural bar of *res judicata*. ***Irving v. State***, 498 So.2d 305 (Miss.1986); ***Rideout v. State***, 496 So.2d 667 (Miss.1986); ***Gilliard v. State***, 446 So.2d 590 (Miss.1984). The

8

Petitioner carries the burden of demonstrating that his claim is not procedurally barred. Miss. Code Ann. §§ 99-39-21(6) (Supp.1991); *Cabello v. State*, 524 So.2d 313, 320 (Miss.1988). However, "an alleged error should be reviewed, in spite of any procedural bar, only where the claim is so novel that it has not previously been litigated, or, perhaps, where an appellate court has suddenly reversed itself on an issue previously thought settled." *Irving v. State*, 498 So.2d 305, 311 (Miss.1986).

614 So.2d at 893 (footnote omitted).[3]

¶17.     This Court has made clear that a petitioner seeking post-conviction relief cannot be allowed to relitigate the same issues, nor may issues not raised on direct appeal or at the trial court be reviewed.  Such claims are procedurally barred.

¶18.     Excepted  from this prohibition, however, are:

---

[3]Miss. Code Ann. § 99-39-21 (Supp. 2002) states in its entirety:

(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.
(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.
(4) The term "cause" as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.
(5) The term "actual prejudice" as used in this section shall be defined and limited to those errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.
(6) The burden is upon the prisoner to allege in his motion such facts as are necessary to demonstrate that his claims are not procedurally barred under this section.

those cases in which the prisoner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence.

Miss. Code Ann. §§ 99-39-23(6) & -27(9) (Supp. 2002). In grounds 1, 2, and 15, Jackson alleges claims based on an intervening change in the law that did not become ripe until after his direct appeal was decided.[4] These issues will be addressed accordingly.

¶19. Finally, Jackson has raised ineffective assistance of counsel claims, the standards of reviewing which are also well-settled. As this Court stated in **Woodward v. State**, 843 So.2d 1 (Miss. 2003):

> "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Strickland v. Washington**, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Id.* at 687, 104 S.Ct. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." **Stringer v. State**, 454 So.2d 468, 477 (Miss.1984), citing **Strickland**, 466 U.S. at 687, 104 S.Ct. at 2064. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*
>
> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

---

[4]After decision in Jackson's direct appeal, this Court granted relief in **Kolberg v. State**, 704 So.2d 1307 (Miss. 1997), based on an issue concerning the felony child abuse statute, which was identical to an issue raised in Jackson's direct appeal. In ground 2, petitioner relies on the intervening decision of *West v. State,* 725 So.2d 872, 895 (Miss. 1998). Ground 15 rests on **King v. State,** 784 So. 2d 884 (Miss. 2001). There, this Court held that it was error for a trial judge to instruct the jury that it was not to be swayed by sympathy.

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Stringer*, 454 So.2d at 477, citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Defense counsel is presumed *competent. See Finley v. State*, 725 So.2d 226, 238 (Miss.1998), quoting *Foster v. State*, 687 So.2d 1124, 1130 (Miss.1996). *See also Johnson v. State*, 476 So.2d 1195, 1204 (Miss.1985). Then, to determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id.* The question here is whether there is a reasonable probability that, absent the errors, the sentence--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d 426, 430 (Miss.1991) (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss.1987); *Mohr v. State*, 584 So.2d 426 (Miss.1991). *Davis v. State*, 743 So.2d 326, 334 (Miss.1999), citing *Foster v. State*, 687 So.2d 1124, 1130 (Miss.1996).

843 So. 2d at 7.

## LAW AND ANALYSIS

**1.    Whether Jackson was entitled to an instruction on the lesser included offense of manslaughter.**

¶20.    Jackson claims he was entitled to a manslaughter instruction.  This claim was raised on direct appeal in two separate propositions and decided adversely to Jackson.  *See* 684 So.2d at 1226-28, 1228-29.  Therefore, the claim is res judicata and cannot be relitigated. Miss. Code Ann. § 99-39-21(3). However, Jackson claims that this Court's decision in *Kolberg v.*

11

*State*, 704 So. 2d 1307 (Miss. 1997), is an intervening decision which allows him to raise the claim again.

¶21.    In Jackson's direct appeal, this Court, relying on *Butler v. State,* 608 So.2d 314 (Miss. 1992), decided adversely to Jackson on the manslaughter instruction issue.   In *Butler,* this Court held that failure to give manslaughter instruction was overwhelmingly prejudicial where jury ultimately found that defendant had caused child's death, *but not that he either attempted to kill child or intended death*.   *Id.*   at 320.   Butler was charged with the murder of her child after the child presented to the hospital with severe internal injuries and died several days later. Butler argued that the CPR efforts caused the child injuries.   Experts disagreed.   Butler was indicted for capital murder under the felony child abuse statute.   In Jackson's direct appeal, this Court distinguished *Butler* and held that "[a] lesser-included offense instruction is required only "where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt."   *Jackson*, 684 So.2d at 1228 (citing *Mackbee v. State,* 575 So.2d 16, 23 (Miss.1990); *Boyd v. State,* 557 So.2d 1178, 1181 (Miss.1989)).

¶22.    Following *Jackson*, this Court again relying on *Butler* ruled in *Kolberg,* a case almost factually identical to *Butler,* that a trial court's failure to provide a manslaughter instruction in addition to the child abuse/capital murder instruction was reversible error because the elements of each crime were identical. 704 So.2d at 1315.   Specifically, the jury ultimately found that Kolberg had caused the child's death, but it did not find that he had either attempted to kill the child, or intended that it should happen. Thus, it was apparent that the jury found the elements of the crime of manslaughter. However, they were not given that option at the guilt

12

phase because the trial court erroneously refused to give a manslaughter instruction. *Id*. at 1316.

¶23.    *Kolberg* announced no new rule of law that would adversely affect the conviction or sentence in the present case.  It  is not an intervening decision. It represents, rather,  an application of existing law, *Butler*.  *Butler* and *Kolberg* are almost factually identical, two cases in which manslaughter instructions were appropriate based on the facts;  the present case is entirely distinguishable.  *Id.* at 1315. The *Butler* precedent was available at the time Jackson's case was considered on direct appeal; it was employed by this Court.  This Court distinguished *Butler* from the factual situation in Jackson's case and denied relief.

¶24.    Further, this Court has since limited the reach of  *Butler* to cases where there is a request by the defendant *and* there *is* evidence of manslaughter.  *See Berry v. State,* 703 So. 2d 269, 279-80 (Miss. 1997).   While there was a request in the present case for a manslaughter instruction, there was no evidence of manslaughter.

> Jackson's statement to police indicates that he planned the robbery believing that his mother and the rest of the household would be at church. His attorney conceded that the only evidence to support a heat of passion manslaughter instruction was that Jackson had gotten into a fight with Regina because she did not know the combination to the safe. However, although he used Andrea as a shield while he and Regina were struggling, there is no evidence that he stabbed the baby or killed the children at that time. Especially in light of the comment to Regina that he had come to kill them previously and was going to kill them that night, we find no basis for the requested instruction.

*Jackson,* 684 So.2d at 1228.  As this Court found, there was no evidence of manslaughter on which to base granting Jackson a manslaughter instruction. For this and the above cited reasons,

13

*Kolberg* is not an intervening decision that would allow the relitigation of a claim that is res judicata. Jackson's claim for relief on this ground is without merit and is therefore denied.

> **2.** **Whether Jackson's death sentence violates the Eighth and Fourteenth Amendments of the U.S. Constitution and analogous provisions of the Mississippi Constitution and Miss. Code § 99-19-107(7).**

¶ 25. Jackson submits that since the jury did not find that he "intended" to kill, he was not death eligible, and therefore his death sentence is unconstitutional pursuant to *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed 2d 1140 (1982), and *West v. State,* 725 So.2d 872 (Miss. 1998), and, that it violates Miss. Code Ann. § 99-19-101(7) (Rev. 2000).

¶ 26. This claim was not raised at trial or on direct appeal and is therefore barred by the provisions of Miss. Code Ann. § 99-39-21(1). *See Wiley v. State*, 517 So.2d 1373, 1377-78 (Miss. 1987). Therefore, this claim cannot be raised for the first time in a post conviction application unless Jackson can show cause and actual prejudice. Miss. Code Ann. § 99-39-21(4) & (5).

¶27. Alternatively, the claim is without merit. In *Enmund,* the United States Supreme Court held:

> [I]t is for us ultimately to judge whether the Eighth Amendment permits imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself *kill, attempt to kill, or intend that a killing will take place or that lethal force will be employed.* We have concluded, along with most legislatures and juries, that it does not.

458 U.S. at 797 (emphasis added).

14

¶28.    This holding was reiterated in *Schad v. Arizona*,  501 U.S. 624, 659, 111 S. Ct. 2491, 115 L.Ed. 555 (1991),  stating that "in order for the death penalty to be imposed for felony murder, there must be a finding *that the defendant in fact killed, attempted to kill, or intended that a killing take place or that lethal force be used. Enmund v. Florida,* 458 U.S. 782, 797 (1982)." Additionally, these requirements have been reiterated in numerous Supreme Court cases since.  The finding of one of these four factors is all that is required by *Enmund*. To satisfy the Eighth and Fourteenth Amendments following the  decision in *Enmund,* the Mississippi Legislature enacted Miss. Code § 99-19-101(7) (Rev. 2000).  *See Russell v. State,* 670 So.2d 816, 834 (Miss. 1995)  (this section was enacted in 1983 in obvious response to *Enmund v. Florida*).  Miss. Code Ann. § 99-19-101 (7) (Rev. 2000) provides:

> In order to return and impose a sentence of death the jury must make a written finding of one or more of the following:
>
> (a) The defendant actually killed;
> (b) The defendant attempted to kill;
> (c) The defendant intended that a killing take place;
> (d) The defendant contemplated that lethal force would be employed.

¶29.    Jackson contends that pursuant to this Court's decision in *West v. State,* 725 So.2d 872 (Miss. 1998), however, the jury was required to find not only that he "actually killed" but "intended to kill" to justify the imposition of the death penalty. In *West,* this Court held that "to the extent that the capital murder statute allows the execution of felony murderers, they must be found to have intended that the killing take place or that lethal force be employed before they can become eligible for the death penalty, pursuant to *Enmund v. Florida,* 458 U.S. 782, 796, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)." *West v. State* 725 So.2d at 895.

15

Further, "the jury cannot return a death sentence at all if it cannot conclude that a capital defendant intended the death of his victim." *Id*.

¶30.   We observe that this language is contrary to the requirements of *Enmund*, Section 99-19-101(7), and the other case law of this Court interpreting this statute.  This Court has held prior to *West*, and following *West*, that the State is required to prove at least one of the factors enumerated beyond a reasonable doubt during the sentencing phase of the trial.  *Jordan v. State*, 786 So.2d 987, 1030 (Miss. 2001); *Smith v. State*, 724 So.2d 280, 297 (Miss. 1998); *Holland v. State*, 705 So.2d 307, 327 (Miss. 1997).  And this is all that *Enmund* requires.

¶31.   The Jackson jury found that Jackson "actually killed the victim," and that he "attempted to kill the victim." Under Miss. Code. Ann. § 99-19-101(7) and the decisions of this Court as well as the Supreme Court of the United States, this was enough to impose the death penalty in the present case. This Court has held that the jury can be instructed on all of these factors at the conclusion of the sentencing phase and may properly find one or all. *Jordan v. State*, 786 So.2d at 1026.  This was made absolutely clear in this Court's decision in *Watts v. State*, 733 So.2d 214 (Miss. 1999), decided after *West*. *Id*. (Defendant could be sentenced to death based on finding that defendant actually killed victim, and jury did not have to make any further finding that defendant attempted to kill, intended to kill, or contemplated use of lethal force. Code 1972, §§ 99-19-101(7)).

¶32.   Inasmuch as Jackson's cited portion of *West* is regarded as legal precedent, rather than dicta, it misstates the law.  We clarify that neither *Enmund* nor Section 99-19-101(7) nor the

16

according decisions of this Court require that the jury find that the defendant "intended" to kill in order to impose the death penalty upon a felony murder conviction.

¶33.    Jackson further contends that if this Court does not grant relief on this point it would be a violation of his due process and equal protection rights.  No capital defendant, including West, however, has ever obtained relief from this Court on the misstatement of the law in *West*.

¶34.    This claim is barred for failure to raise the claim at trial and on direct appeal. Miss. Code Ann. § 99-19-21(1).  It cannot be raised here for the first time.  Alternatively, the claim is without merit.  Jackson's request for relief on this basis is therefore denied.

> **3.     Whether Jackson's eligibility for the Death Penalty based on felonious abuse and/or battery of a child violated his Eighth and Fourteenth Amendment rights under the U.S. Constitution.**

¶35.    Jackson next contends that the Mississippi death penalty scheme, as a whole, and the provisions relating to child abuse/battery capital murder are unconstitutional because they fail to narrow the death eligible class as required by *Zant v. Stephens*.  462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed. 2d. 235 (1983) (states' death penalty schemes "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.").

¶36.    Miss. Code Ann. § 97-3-19(2)(f) provides in pertinent part:

> (2) The killing of a human being without the authority of law by any means or manner shall be capital murder. . .
> (f) [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of felonious abuse and/or battery of a child. . . .

17

Miss. Code Ann. § 97-3-19(2)(f) (Rev. 2000). Specifically, Jackson asserts that the Mississippi scheme is too broad in that it makes death eligible one who kills negligently or accidentally as long as the killing occurred during a felony. Under the child abuse/battery capital murder provision, one is death eligible regardless of intent to kill. Additionally, Jackson contends that the felony child abuse/battery provision unconstitutionally authorizes the death penalty in circumstances in which it is disproportionate to the crime.

¶37. As with the previous claim, this claim is barred because it was not raised at trial or on direct appeal. Nor can Jackson show cause and actual prejudice to overcome this bar. Further, this claim as it relates to the use of the underlying felony as an aggravating factor was decided against Jackson on direct appeal. 684 So.2d at 1235-36. Thus, this portion of this claim is barred as res judicata and cannot be relitigated here. Miss. Code Ann. § 99-39-21(3).

¶38. Alternatively, on the merits, this Court has repeatedly held that "Mississippi's capital sentencing scheme, as a whole, is constitutional. *Simmons v. State,* 805 So.2d 452, 496-97(Miss. 2001). *See also **Puckett v. State**,* 737 So.2d 322, 363 (Miss. 1999); ***Woodward v. State***, 726 So.2d 524, 528 (Miss. 1997). Further, this Court held in 1999 that Section 97-3-19(2)(f) is constitutional notwithstanding that it does not require deliberate design. ***Miller v. State***, 748 So.2d 100, 103 (Miss. 1999). This claim is without merit.

4. **Whether Jackson was denied his rights to an independent, conflict-free, reliable and competent mental health evaluation.**

¶39. Jackson next claims that since Michael Whelan, Ph.D., was employed by the Mississippi Department of Corrections (MDOC) and had treated Jackson for depression previously, that

18

he was laboring under a conflict of interest. Jackson contends therefore that Dr. Whelan could not produce an independent, reliable and competent examination. Jackson also raises this issue in his Application for Leave to file Motion to Vacate Conviction and or Death Sentence in issues one and two therein.

¶40.     This claim was raised at trial, after which Jackson was granted his motion for an additional mental evaluation. This claim was also raised on direct appeal in the context of Jackson's claim that the trial court erred in failing to grant a continuance to obtain an independent examination. This Court found no error on direct appeal. This claim, having been raised and addressed on a different legal and factual theory is nonetheless barred from relitigation. Miss. Code Ann. § 99-39-21(2). Further, since the trial court granted relief on the claim that there was a conflict, there can be no error. This claim cannot be relitigated. ¶41. Alternatively, on the merits, in *Brown v. State*, 798 So.2d 481 (Miss. 2001) this Court held upon a similar claim that a petitioner "is not constitutionally entitled to the effective assistance of an expert witness. *Wilson v. Greene*, 155 F.3d 396, 401(4th Cir. 1998). The issue is without merit." 798 So.2d at 499.

¶42.     As to Dr. Whelan's competence, he has been qualified, recognized and accepted as psychology expert by the courts of this State. Jackson has produced the affidavit of Dr. Chris Lott, however, who states that Dr. Whelan's reports were ineffective in that they did not have sufficient family input to adequately assist in developing mitigation evidence. However, Dr. Whelan suggested three areas of possible mitigation in his report and Dr. Lott does not even suggest any other possible area.

¶43.     This present claim is likewise without merit.

19

**5. Whether Jackson was compelled to incriminate himself by submitting to an examination by Dr. Whelan.**

¶44. Jackson claims he was compelled to incriminate himself by submitting to Dr. Whelan's evaluation. This claim was not raised at trial or on direct appeal and is therefore barred from consideration here. Miss. Code Ann. § 99-39-21(1). Further, Jackson has not demonstrated any cause and actual prejudice in attempting to overcome this bar.

¶45. Alternatively on the merits, Jackson's claim is based merely on Dr. Whelan's conclusion that Jackson's story about how he ended up in Greenwood the night of the murders was a falsehood. The transcript makes clear that this conclusion was not based upon Dr. Whelan's prior treatment of Jackson. Having told the doctor why he was in Greenwood that night once, and, having repeated the same story on other occasions, is not self incrimination. Dr. Whelan clearly states in the record that he based his conclusion on the statement of the victims and Jackson's confession given to law enforcement.

¶46. Jackson is not entitled to relief on this claim.

**6. Whether Jackson was denied affective assistance of counsel on direct appeal in connection with his Petition for Rehearing.**

¶47. Jackson claims that attorney C. Jackson Williams, who filed the petition for rehearing in this case, was ineffective in failing to point out that footnote four of this Court's opinion on direct appeal was incorrect as it related to Dr. Whelan's employment with the Department of Corrections, and that this Court failed to address the issue of Jackson being in his prison attire in front of the jury venire.

¶48.    As to Dr. Whelan's employment status, at trial, Dr. Whelan testified that he worked for the MDOC.  On direct appeal, counsel for Jackson challenged the circuit court's refusal to allow him to question Dr. Whelan as to whether any complaints that Dr. Whelan had about Jackson stemmed from Jackson's reluctance to cooperate with an employee of the MDOC. This Court denied relief on this claim and added a footnote in its opinion stating that the "circuit court clarified that Dr. Whelan was not employed by the Department of Corrections," 684 So. 2d at 1231 n.4, when in fact he was. This discrepancy notwithstanding, Jackson fails to demonstrate deficient performance and actual prejudice in counsel's failure to raise an issue about it.    Having failed to prove both of these factors, Jackson cannot sustain a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 , 104 S.Ct. 2052, 80 L.Ed. 674 (1984).  Jackson therefore is not entitled to relief on this claim.

¶49.    Although raised, the prison attire issue was not addressed in the direct appeal opinion. Jackson now argues that his trial attire precipitated a "substantial danger of destruction in the minds of the jury of the presumption of innocence." (quoting*Hickson v. State,* 472 So.2d 379, 383 (Miss. 1979) (concerning a handcuffed defendant).  However, there is no merit to this claim as Jackson was not dressed in  attire that would necessarily conjure up the image of "prisoner."  The Supreme Court of the United States has stated that prejudicial attire is "distinctive,identifiable attire," that may affect a juror's judgment. *Estelle v. Washington,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, 131 (1976).  Further, a constitutional violation may occur where a judge compels a defendant to wear such attire, thus resulting in prejudice. *Id*.  The record reveals that Jackson's attire consisted of ordinary navy pants and a blue chambray shirt.  Jackson's counsel objected at trial since the clothing was provided by the Department

of Corrections, but was overruled on the basis that the clothing was not distinguishable from ordinary, everyday clothing. Further, the trial judge did not deny Jackson the opportunity to change his clothing, but recognized and explained on record that no other clothing was available.

¶50. While counsel who filed the petition for rehearing may have had a duty to point out that the Court failed to address this claim, Jackson fails to demonstrate both deficient performance and actual prejudice as a result as required by *Strickland*, 466 U.S. at 693. We cannot conclude that had he been in alternative nondescript clothing, the outcome of his trial and sentence would be different. This claim is without merit. Jackson is not entitled to relief.

**7. Whether Jackson was denied effective assistance of counsel regarding his mental health examinations and the withdrawal of an insanity defense.**

¶51. Jackson claims that trial counsel was ineffective in failing to obtain an independent, competent and reliable mental health evaluation at an earlier date that would substantiate Jackson suffered from "brain-damage," which he now alleges led to the murders and attempted murders. He contends that this Court so found on direct appeal. Jackson cites the following from the opinion:

> Given the five-month time frame in which Jackson's attorney could have filed a notice of insanity defense, voiced his objections to the evaluations by the court-appointed doctors or taken other measures to secure evaluations by psychiatrists or psychologists of his choice, and the fact that he found it necessary to withdraw the insanity defense after obtaining Dr. Summers' evaluation, we cannot say that manifest injustice resulted from the refusal to grant a continuance.

684 So. 2d at 1222.

22

¶52.   Jackson contends that had trial counsel objected more promptly, explained the alleged conflict of interest regarding Dr. Whelan's employment with the MDOC,  and, inter alia, moved earlier to have an independent evaluator appointed, then "Mr. Jackson would have a winning claim on direct appeal with respect to the continuance issue or would have been able to present experts at trial who had sufficient time to conduct a reliable mental health evaluation."

¶53.   On August 21, 1991, in response to the motion for continuance, the State maintained that the defendant's psychiatrist or psychologist are not constitutionally required. The State also noted, "[i]n this case there is no suggestion of insanity. I have, in fact, asked that question. No notice has been filed." Jackson, in fact, did not raise an insanity defense; it was abandoned because he was unable to present any evidence to create a *M'Naghten* question.

¶54.   Jackson also raises in his Motion to Vacate Death Sentence that the effectiveness of counsel was interfered with when the trial court failed to appoint defense mental health experts or timely authorize funds to hire "defense" mental experts or grant a continuance.  This claim is based on the assumption that *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed. 2d. 53 (1985), requires the appointment of "defense" mental experts of Jackson's choice.  In *Ake,* the Supreme Court held that:

> [W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination. . .This is not to say, of course that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.

23

470 U.S. at 83. As mentioned, Jackson abandoned his insanity defense because he was unable to present any evidence create a *M'Naghten* question. Dr. Whelan, Dr. McKinley and Dr. Summers all stated that Jackson was not insane under this test. And Jackson admits this in his Memorandum in Support of Application for Leave to File Motion to Vacate Conviction and/or Death Sentence. This being so, Jackson was entitled to the court-appointed psychologist and psychiatrist according to constitutional standards, which he was provided. And indeed, the record shows that Jackson was provided with several competent mental health experts to examine him. The fact that they could not say he was insane nor that the *M'Naghten* test could not be met is not a flaw in defense counsel's performance. Defense counsel cannot force a physician to come to any particular medical or scientific conclusion. Jackson cannot therefore show deficient performance of counsel nor, by virtue of that inability, any resulting prejudice. Morever, this very issue was addressed on direct appeal and is therefore procedurally barred. This bar notwithstanding, the claim is without merit.

> **8.** **Whether Jackson's trial counsel failed to develop and present evidence in mitigation of punishment.**

¶55. Jackson next contends that trial counsel was ineffective in failing to produce additional mitigation evidence during the sentencing phase of trial. Jackson contends that trial counsel should have introduced evidence of his "chaotic family history, his solid employment history and other evidence that would have garnered sympathy."

¶56. This claim is without merit. Trial counsel called seven mitigation witnesses including Dr. Whelan and Jackson's probation officer. These witnesses testified as to Jackson's self elected choice to turn himself in, his remorse, his anger disorder, potential metabolic

24

disorders, toxic disorders and traumatic brain injury, Jackson's I. Q. -- being in the low eighties -- that Jackson was intellectually slow, and, inter alia, that prior to Jackson's crime he did not have a persuasively criminal or anti-social personality.

¶57. Family members testified indicating their love for and forgiveness of Jackson, that they knew of several head injuries he sustained, and something was mentally wrong with Jackson. Jackson's sister, the mother of two of the murdered children, testified that she was hurt and angry, that Jackson should be punished, but not put to death. She stated that she met with Jackson following the murders, that she had forgiven him and that she still loved her brother.

¶58. Jackson's mother testified to numerous childhood head injuries related to sports and work. She testified to how supportive Jackson had been of her financially, that he would often buy her groceries and supplies. She testified that Jackson should be punished but not sentenced to death.

¶59. Finally, Dr. Summers was called to testify. He testified to numerous head injuries, blackouts, major depression, intermittent explosive episodes of anger, that Jackson had complex partial-seizure disorder and potential adverse pharmaceutical reactions.

¶60. Given this testimony, we are unpersuaded that had any other witnesses been called, the outcome of Jackson's sentence would be different. Indeed, Jackson fails to demonstrate a reasonable probability that the result of the sentencing phase would have been different had there been any other mitigation evidence. Therefore, Jackson does not demonstrate deficient performance of counsel and actual prejudice as required by *Strickland* and *Wiggins v. Smith*, 123 S. Ct. 2527 ( 2003). Jackson therefore is not entitled to relief on this claim.

25

**9.** **Whether Jackson was denied effective assistance by counsel's failure to object to the testimony of the court-appointed expert on an ultimate issue of law**.

¶61.   Jackson contends that trial counsel was ineffective for failing to object to a comment on responsibility by Dr. Whelan during the State's cross-examination during the sentencing phase.  Specifically, the prosecutor attempted to get Dr. Whelan to distinguish between his opinion that Jackson was responsible for his actions and the mitigating factors he suggested in his report.  He was not, in doing so, making a comment on the ultimate issue of responsibility as Jackson contends and as the record reveals:

> By Mr. Crook: If I am understanding your report to the Court and your testimony, his actions and emotions that you found to be present had nothing to do with his responsibility is that correct?
> A.  Not in a legal sense, no.  Neither you nor Mr. Walls has really asked me to explain my psychological testing and why that led him to do what he did. But in a legal sense, no. He is responsible for what he did.
> Q. Well, in mitigating factors, if I understand you correctly, are that his history prior to arrest is relatively stable, means he doesn't have any problems as far as --
> A. He is married for several years, three of four years and is raising a family, had his own children, had a steady job, that is what I mean by that. He wasn't going out and robbing stores and beating up people.

As to responsibility, in any case, the jury had already found Jackson guilty.  Moreover, trial counsel raised the underlying claim on direct appeal and this Court held it barred for failure to object at the time.  *See* 684 So.2d at 1231.  The claim remains barred.

¶62.   Alternatively, Jackson does not show deficient performance and actual prejudice as required to establish a claim for ineffective assistance in counsel's failure to object to the comment. We conclude there is no reasonable probability therefore that but for the failure to object, the result of the sentence phase would have been different.  Jackson fails to satisfy *Strickland* on this claim and is not therefore entitled to relief.

26

**10.** **Wether Jackson was competent to stand trial and, in the alternative, whether trial counsel was ineffective for failing to object to this issue below**.

¶63. Jackson next contends that because he was too depressed to complete a neuropsychological screening test that he was incompetent to assist his attorneys and therefore incompetent to stand trial. This claim was not raised at trial or on direct appeal and is therefore barred under Miss. Code Ann. § 99-39-21(1).

¶64. Alternatively, Jackson was examined by two experts and found competent to stand trial. Although one doctor found him not, there is no mention in that doctor's report for purposes of this application that Jackson was not competent. The report of the two doctors that found Jackson competent are sufficient to overcome this claim on the merits. Jackson is not entitled to relief on this claim.

**11.** **Whether Jackson was denied his right to be present during trial and personally confront the witnesses against him and, in the alternative, whether trial and appellate counsel were ineffective in handling these issues.**

**12.** **Whether the trial court erred in not holding a hearing to determine whether Jackson was competent to waive his right to be present and, in the alternative, whether trial and appellate counsel were ineffective for not raising the issue.**

¶65. These issues are closely related and are therefore addressed together. First, Jackson claims he was denied his right to be present at trial. Second, he claims that the trial court should have held a competency hearing to determine whether he was competent to waive his presence at trial. Neither of these claims were raised at trial or on direct appeal and are therefore barred by Miss. Code Ann. § 99-39-21(1), and cannot be raised for the first time in this application for post-conviction relief.

27

¶66. Alternatively on the merits and as to effective assistance, the record reflects that Jackson left the courtroom of his own free will in each instance. The record also makes clear that he was competent to waive his right to be present as all of his departures resulted from trial times during which evidence or testimony was presented illustrating the damage he caused his victims. The trial court discussed the matter with Jackson and Jackson's counsel and allowed him to leave upon presentation of this often gruesome evidence. Further, the trial court stated that it would instruct the jury that Jackson had the right to leave and that no inference should be drawn from his absence.

¶67. Following the testimony of Officer Bowles, trial counsel reported that Jackson was sick and vomiting. The court requested that Jackson brought into the courtroom to be questioned. Jackson said he had not eaten, that he however did not need a doctor, and waived his presence. After the next witness, counsel moved to continue, which the court denied because Jackson had waived his presence. Jackson's departures from the courtroom were consistently related to the presentation of evidence regarding his victims. And the record reflects consistent court inquiry each time.

¶68. Finally, the record shows that Jackson voluntarily absented himself during the reading of portions of his confession. The trial court stated:

> BY THE COURT: The court watched him and he left voluntarily. I was looking at him. He left on Page 13 and 17. I noted it and put that in the record. And he has left several times. He has informed the Court that he wished to at certain points leave. The Court gave him that permission and told him that it was his absolute right to be there but I could not require him to be there.

¶69. Jackson claims that trial and appellate counsel were ineffective in failing to raise these issues. Based on the record of Jackson's voluntary departures from the courtroom, however,

this claim is without merit. Jackson cannot show deficient performance or actual prejudice; and there is no reasonable probability that had Jackson been present at every moment of the trial, the outcome of his trial or appeal would be different.

¶70.    These two claims are barred from consideration for the first time here. Jackson has not established the required cause and actual prejudice to overcome this bar. Jackson is not entitled to relief on these claims.

**13.    Whether Jackson rights were violated due to improper prosecutorial argument and, in the alternative, whether counsel was ineffective for failing to object to the allegedly improper arguments**.

¶71.    Jackson claims that the prosecution made improper jury arguments based on the Bible and biblical teachings. Specifically, the claim is that the prosecutor improperly asked the jury to follow God's law, citing it as "extrajudicial authority," and as such the prosecutor engaged in an impermissible "misstatement of the law." The record reveals that the prosecutor related to the jury the story of the ancient King Herod who, according to the Bible, ordered that every child under the age of two be put to death. Additionally, the prosecutor stated that "God's law in the beginning was, if you commit a willful murder, that you should be put to death." No objection was raised at trial or on direct appeal. Therefore this claim is barred by Miss. Code Ann. § 99-39-21(1) and cannot be raised here for the first time.

¶72.    Alternatively, this Court has held that arguments with scriptural, religious or biblical references are proper subjects for comment during closing, especially when they are responsive to those of defense counsel. *Berry v. State,* 703 So.2d 269, 281 (Miss. 1997); *Carr v. State,* 655 So.2d 824, 853 (Miss. 1995); *Hansen v. State,* 592 So.2d 114, 139-40

(Miss. 1991); *Shell v. State*, 554 So. 2d 887, 899 (Miss. 1989) *rev'd on other grounds*, 498 U.S. 1, 111 S. Ct. 313, 112 L.Ed. 2d 1 (1990); *Nixon v. State*, 533 So. 2d 1078, 1100-01 (Miss. 1987), *overruled on other grounds*, *Wharton v. State*, 734 So. 2d 985 (Miss. 1998). During the defense closing, the record reflects that Jackson's counsel made religious-based arguments. Jackson's claim that counsel was ineffective therefore in failing to object to the biblical references is without merit.

**14. Whether other prosecutorial arguments and comments violated Jackson's rights and misinformed and misdirected the jurors on the law; in the alternative, whether counsel was ineffective for not objecting to the prosecutorial misconduct.**

¶73. Jackson claims the prosecutor improperly commented on Jackson's failure to take the stand and testify, gave an incorrect explanation of the nature of mitigation, misled the jury as to mitigating factors, offered her personal opinion on the quality and credibility of defense witnesses during the sentencing phase, and that trial counsel was ineffective for failing to object to the statement that Jackson had been convicted of kidnaping.

¶74. Jackson correctly notes that this Court barred these claims on direct appeal since no objection was raised at trial. *See* 684 So.2d at 1226. This being so, the claims are still barred by Miss. Code. Ann. § 99-39-21(1). Further, since this Court has decided these claims on direct appeal, although on the basis of the procedural bar, they are now res judicata under Miss. Code. Ann. § 99-39-21(3) and cannot be relitigated.

¶75. Attempting to overcome this bar under the cause and prejudice standard, Jackson claims counsel was ineffective by not objecting to the prosecutor's conduct. Jackson has not shown,

however, that counsel was deficient and that he suffered actual prejudice as required by *Strickland*.

### a. *Comment on the failure to testify*.

¶76. On direct appeal, this Court addressed the merits of this claim and found "no such allusions in the portions of the trial transcript cited by the appellant." 684 So.2d at 1226. This claim has been addressed and should not therefore be addressed again on the merits here.

### b. *Explanation of nature of mitigation.*

¶77. Jackson claims the prosecutor incorrectly informed the jurors of the law of child abuse at the sentencing phase. Specifically, she did not argue that the abuse had to be intentional. Even if she so argued, the jury was properly instructed on the law by the trial court and also instructed that counsel arguments were just arguments and not to be used as the law. Given this fact, Jackson cannot show that he was prejudiced here and cannot therefore sustain an ineffective assistance claim as required by *Strickland*.

### c. *Misleading comments regarding the existence of mitigating factors.*

¶78. The prosecutor also argued that there was nothing "which mitigates these crimes." Jackson complains. The prosecutor, however, is entitled to rebut any evidence and argue that it is not worthy of consideration. *See, e.g., Wiley v. State,* 750 So.2d 1193, 1202 (Miss. 1999); *Evans v. State,* 725 So.2d at 676. Further, since the jury was properly instructed on how to consider mitigating evidence, Jackson cannot sustain a claim of ineffective assistance because he cannot demonstrate actual prejudice in light of the fact that such instruction was given.

### d. *Arguments of facts not in evidence.*

¶79.    Jackson argues that counsel was ineffective in failing to object to the prosecutor's misstatement during closing that Jackson had been previously convicted of kidnaping. This Court noted on direct appeal, however, that those charges had been dropped and that a certified copy of Jackson's burglary conviction had gone to the jury. 684 So.2d at 1236. Therefore, any misstatement the prosecutor made on this topic was not prejudicial as the jury actually knew from the conviction introduced that it was burglary with the intent to commit kidnaping. Further, counsel objected at trial to the characterization of the prior crime as a conviction for kidnaping during the cross-examination of Dr. Summers. The jury heard this objection and the judge's ruling.

¶80.    That trial counsel failed to object during closing does not demonstrate, in the face of the introduced burglary conviction, that Jackson was prejudiced. Moreover, there is nothing in the record or in Jackson's brief to suggest that, but for counsel's failure to object, the outcome of Jackson's conviction or sentence would be different as required by **Strickland**.

### e.    *Comment on the quality and credibility of the evidence.*

¶81.    Jackson claims that the prosecutor improperly commented on the quality and credibility of defense witnesses during the sentencing phase when she stated that she "questioned the sincerity of forgiveness." The transcript reflects the context in which this statement was made – she was referencing her actual line of questioning during cross-examination of those witnesses:

> Counsel tells you that all of those mothers and family members forgive him. And, I think that's interesting, ladies and gentlemen, because they say they forgive him but they still think he should be punished. And I questioned the sincerity of that forgiveness. I know what Regina told you.

32

She couldn't forgive everything he did. The family has some interesting explanations for why he did what he did. . .

¶82.  The record reflects that the prosecutor questioned each witness as to their sincerity of forgiveness during cross-examination. This was not a reflection of her personal opinion. Jackson fails to demonstrate that counsel actually had a basis to object here and, therefore, that counsel was deficient for not doing so resulting in prejudice to his case, as required by *Strickland*.

¶83.  All of these claims are barred by Miss. Code Ann. § 99-39-21(1) & (3), and in addition do not demonstrate ineffective assistance of counsel by deciding not to object. Jackson is not therefore entitled to relief on these claims.

> **15.  Whether the trial court's instructions to the jury regarding sympathy violated Jackson's rights and, in the alternative, whether trial counsel was ineffective for not objecting to them.**

¶84.  Jackson claims that the jury instruction to disregard sympathy, part of an approved long-sentencing instruction, was given by the court in error. Additionally alleged as error is the judge's comment to the jury that "your decision must not be influenced by sympathy or by any bias or prejudice based on race, religion, color or any such matter." The instruction reads in part:

> You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

¶85.  This claim was addressed in the context of the failure to grant a mercy or sympathy instruction to the jury by this Court on direct appeal and found to be without merit. *See* 684 So.2d at 1239. It is therefore barred as res judicata by Miss. Code Ann. § 99-39-21(3).

33

¶86.   Jackson attempts to overcome this bar, however, by claiming that *King v. State,* 784 So. 2d 884 (Miss. 2001), is an intervening decision requiring relief on this claim.  It is not.

¶87.   In *King,* we held that it was reversible error for the court to instruct the jury that sympathy should have no part whatsoever in its deliberations and to have told counsel that he "couldn't ask for sympathy in any way." *Id*.  Indeed, this Court has repeatedly held that under the Eighth Amendment to the U.S. Constitution, "a jury may not be instructed to disregard, in *toto*, sympathy." *Pinkney v. State*, 538 So.2d 329, 351 (Miss. 1988, *vacated and remanded on other grounds,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990).  Such is not the circumstance with the present instruction.  There is no instruction to the jury that it must *totally* disregard sympathy.  Further, the present instruction and similar instructions have been approved by this Court many times. *Woodward v. State,* 843 So.2d at 19; *Jordan v. State,* 786 So.2d at 1025; *Evans v. State,* 725 So.2d at 690-91 (Miss 1997); *Bell v. State,* 725 So.2d 836, 865 (Miss. 1998); *Holland v. State,* 705 So.2d 307, 351-52 (Miss. 1997); *Blue v. State,* 674 So.2d 1184, 1224-25 (Miss. 1996).  This claim is without merit.

¶88.   Jackson claims that should this Court not find *King* intervening, trial counsel was ineffective in failing to object to the sentencing instructions and failing to object to the prosecutor's comment that Jackson did not deserve sympathy. But this is not improper since the defense argued that Jackson did deserve sympathy. The prosecutor's comment was made in rebuttal.  This Court has held that the State is allowed to make its case for the death penalty.  *See King v. State,* 784 So.2d at 889-90 ("Clearly, it is appropriate for the defense to ask for mercy or sympathy in the sentencing phase. It is equally appropriate for the state to further its goal of deterrence by arguing to 'send a message' in the sentencing phase. Both of these

34

arguments are recognized as legitimate considerations to be hade by those who argue 'for or against' the death penalty.").

¶89.    This claim is barred by Miss. Code Ann. § 99-39-21(2) & (3) and is alternatively without merit. Contrary to Jackson's claim, the jury was not instructed to totally disregard sympathy.  Jackson can neither demonstrate deficiency of counsel nor actual prejudice therefore.  Jackson is not entitled to relief on this claim.

### 16.    Whether Jackson's rights were violated due to cumulative trial error.

¶90.    Jackson claims that "[s]everal errors discussed above cannot be harmless." We first observe  that all of Jackson's claims, including this one,  have already been litigated.  684 So.2d at 1239.  They   cannot  be  relitigated here. Miss. Code  Ann. § 99-39-21 (3). Alternatively they are  without merit.  Nor has Jackson  raised a viable claim of ineffective assistance of counsel.

### CONCLUSION

¶91.    Jackson's petition for post-conviction relief and application for leave to file motion to vacate conviction and/or death sentence, as supplemented, are denied.

¶92.    **PETITIONS FOR POST-CONVICTION COLLATERAL RELIEF, DENIED**.

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING**.

35