557 So.2d 1178 (1989)
Tony Trevelle BOYD
v.
STATE of Mississippi.
No. 07-58545.
Supreme Court of Mississippi.
October 18, 1989.
Rehearing Denied April 4, 1990.
*1179 Gerald Chatham, Hernando, Jack R. Jones, III, Taylor Jones Alexander Firm, Southaven, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice January 3, 1989, Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, ANDERSON and BLASS, JJ.
ANDERSON, Justice, for the Court:
Tony Trevelle Boyd was indicted by the Tate County Grand Jury in October of 1986 for rape on or about August 27, 1986. He was found guilty as charged, and on June 19, 1987, because the jury was unable to fix the penalty at life imprisonment, the trial judge sentenced Boyd to serve fifteen years in the Mississippi Department of Corrections with five years suspended. From this conviction and sentence Boyd appeals and asserts five assignments of error, only one of which has any merit and requires that we reverse and remand.

FACTS
This case rests on the adage: "There are two sides to every story." On the one hand, there is the testimony of the prosecutrix. But, on the other hand, there is a different story based on the same incident presented by the appellant. A story that not only seems to be the opposite to what the victim testified, but one which appears to be unrelated to anything to which the prosecutrix testified.
What we do know is that on the morning of August 27, 1986, the victim, a twenty-eight year old resident of Lake Carmorant, Mississippi, took her two children and a neighbor's child to the beach at Arkabutla Lake in Tate County. During the ten o'clock hour the eighteen year old appellant came on the scene. What transpired subsequently is irreconcilable between the parties. According to the prosecutrix these are the facts:
[On Direct examination]:
Q Now, Cathy, you say that he came up to you and made some comment about the weather?
A Yes, sir.
Q What happened after that?
A He walked down to the water. He put his feet in and he turned around and he walked back toward me ... the next thing I knew I had a fist in my  I don't know which side, I think this side first  had a fist in my face anyway and he hit me a couple more times after that.
Q Was anything said to him and him to you before he actually struck you?
A No, sir, just the comment about the weather.
Q Did he strike you with an open hand or a closed fist?
A A closed fist.
Q Did he hit you with hard force or light force?
A Yeah, he rung my bells.
Q Now, after that happened, what happened next?
A ... He proceeded to pull my bathing suit down and he went from there.
Q Now, what kind of bathing suit did you have on?
A One piece.
Q A one piece bathing suit?
A Very modest.
Q Okay. And, how  could you describe how he pulled it down?
A Left hand this side and he jerked it down to about my knees. He didn't remove it completely, just about down to my knees, he did not take it off completely.
Q And, what happened then?
A He then took  well, he had one of his hands on his penis and he dropped down on top of me and he tried to penetrate three or four times.
Q Did he ever penetrate?
A He penetrated, but not a full penetration.
Q Now, you say there was penetration but it wasn't a full penetration.
A Not a full penetration, no, sir.

*1180 Q Now, how long did this  how long did this episode when he was trying to penetrate last?
A I don't know, sir; maybe five minutes or less.
The appellant chose to take the stand and testify on his own behalf. His version of the encounter was significantly different from that of the prosecutrix. According to Boyd, he had been dropped off in the area by one of his friends as they were prepared to go swimming. Subsequently, this is what happened:
[Direct examination of Tony Boyd]:
Q Alright. Now, when he let you out, I want you to tell the Court and Jury what happened then.
A When he let me out, I walked down towards the beach and there was a lady sitting down there. She was in the water and she came out of the water when I was walking down there and she sat down and she called me a stupid black, I don't have any business down here, you stupid black-ass Nigger.
Q And, how far was you from her when she said that?
A About from here to you.
Q Alright. And, what did you do then?
A I asked her what she said.
Q Okay. Then what happened?
A She told me, "You heard me, you stupid-ass Nigger."
Q Okay. What happened then?
A She picked up a pipe that was laying beside her and she came  she got up and started coming towards me; it was when I was in the water like, she started coming towards me and I just took my hand and kind of back handed her with my hand and knocked her down and she pulled her straps down from right here and asked me, "Is that what you want, Nigger?" like that.
Q And, then what did you do?
A Looked at her and smiled and walked off.
Other evidence elicited during the trial indicated that there may or may not have been a rape. Most significantly, there was testimony indicating that the prosecutrix had stated that there was no penetration; yet she always maintained that Boyd had hit her in the face at least twice. In addition the defendant's statement to the police officers revealed that "[she] opened her legs and I got down on top of her. I put my penis on her upper leg but did not put it inside her." However, Boyd denied that he made this statement during his suppression hearing and further denied it at his trial.

DISCUSSION OF LAW
Tony Boyd was charged and convicted of rape pursuant to § 97-3-65(2) of the Mississippi Code Annotated, as amended, which provides in pertinent part:
Every person who shall forcibly ravish any person of the age of fourteen (14) years or upward, or who shall have been convicted of having carnal knowledge of any person above the age of fourteen (14) years without such person's consent ... upon conviction, shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.
The Mississippi Code Annotated § 97-3-7, (Supp. 1989), defines "simple assault" and "aggravated assault" as follows:
(1) a person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm.
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to *1181 another with a deadly weapon or other means likely to produce death or serious bodily harm ...
Boyd now complains that the trial court should not have refused his instructions on the lesser included offenses of simple and aggravated assault, and we agree.
The appellant requested the following jury instructions:
INSTRUCTION NUMBER D-2
The Court instructs the jury that if you find that the State has failed to prove any one of the essential elements of the crime of rape, you must find the Defendant not guilty and you will proceed with your deliberations to decide whether the state has proved beyond reasonable doubt all the elements of the lesser crime of aggravated assault.
INSTRUCTION NUMBER D-3
The Court instructs the jury that if you find that the State has failed to prove any one of the essential elements of the crime of rape, you must find the Defendant not guilty and you will proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of simple assault.
INSTRUCTION D-4
The Court instructs the jury that if you find from the evidence, if any, beyond a reasonable doubt that the Defendant knowingly or purposely injured or attempted to cause bodily injury to [the prosecutrix] then you shall find the Defendant guilty of simple assault.
INSTRUCTION NUMBER D-5
The Court instructs the jury that if you find from the evidence, if any, beyond a reasonable doubt that the Defendant purposely or knowingly under circumstances manifesting extreme indifference to the value of human life, caused serious bodily injury to [the prosecutrix] then you shall find the Defendant guilty of aggravated assault.
This is not the first time that this Court has been asked to review this issue raised on appeal. Like so many other cases that have come before this Court, the State has charged a defendant with a serious felony, and in response, the defendant has come forward with evidence rendering him far less culpable thereby requiring lesser punishment. See Griffin v. State, 540 So.2d 17 (Miss. 1989); Mease v. State, 539 So.2d 1324 (Miss. 1989); Griffin v. State, 533 So.2d 444 (Miss. 1988); Armstead v. State, 503 So.2d 281 (Miss. 1987).
For some unknown reason, our competent and able trial judges continue to refuse instructions on lesser included offenses when the evidence warrants them. This in essence allows the jury to hear the defendant's side of the story; however, it also bars that same jury from using that evidence during its deliberations. This forces the jury, when it has the choice between finding the defendant guilty of something or allowing him to go free, to convict a defendant of a greater offense when he could possibly only be guilty of a lesser crime.
In deciding whether lesser included instructions are to be given, trial courts must be mindful of the disparity in maximum punishments. Generally, where the disparity is great this Court has required lesser included instructions to be given. Griffin, 533 So.2d at 447. In the case sub judice, for example, a maximum penalty for simple assault carries a six month jail term in the county jail and a five hundred dollar fine; whereas the maximum penalty for aggravated assault carries a twenty-year prison term in the penitentiary. MCA §§ 97-3-7(1), (2) (Supp. 1989). Conviction for rape, however, puts the defendant face to face with the possibility of serving a prison term for the remainder of his life. MCA § 97-3-65(2) (Supp. 1989).
Even where there is such disparity in maximum punishments between the offenses, the trial judge cannot indiscriminately give the instructions. Neither can he give them on the basis of pure speculation, but there must be some evidence regarding the lesser included offense. Mease, 539 So.2d at 1329-30.
*1182 The evidentiary basis for the giving of lesser included instructions is laid out in Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984), a case involving the propriety of giving instructions on simple murder in a prosecution for capital murder:
[O]nly if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the state, that no hypothetical reasonable jury could convict [the defendant] of simple murder, can it be said that the refusal of a lesser included offense instruction was proper.
This same standard has been expressed differently in subsequent cases. See, e.g., Fairchild v. State, 459 So.2d 793, 800 (Miss. 1984) (instruction on manslaughter or simple murder may be required in prosecution for capital murder); Griffin v. State, 540 So.2d 17, 21 (Miss. 1989) (instruction on simple assault required in prosecution for aggravated assault); Monroe v. State, 515 So.2d 860, 863 (Miss. 1987) (instruction on assault may be required in prosecution for robbery); and Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985) (instruction on trespass required in prosecution for burglary). However, "[r]eflection makes clear that all of these tests are different ways of saying the same thing." Mease, 539 So.2d at 1330.
The jury may consider any of the evidence presented at trial. It is not limited to the testimony of the defendant. See Griffin, 540 So.2d at 21. Moreover, "[n]either the trial court nor this Court should ask which way the evidence preponderates  [the greater or lesser offense]." Mease, 539 So.2d at 1330. Likewise, neither the trial court nor this Court can "merely ask if there is sufficient evidence to sustain the jury's verdict of guilty of [the greater offense]. The answer to that question in this and other cases may be `yes' and there still be reversible error in not giving the lesser-included instruction." Fairchild, 459 So.2d at 801; see also, Mease, 539 So.2d at 1330.
This Court's most recent dictation of the standard further drives the point home by stating "[a] lesser-included offense instruction must be granted where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt." Griffin, 540 So.2d at 21. (emphasis added) (quoting Harbin v. State, 478 So.2d 796, (Miss. 1985)); see also, Griffin, 533 So.2d 444; Fairchild, supra.
This language is not limiting. It does not compel the jury to consider only the testimony of the defendant, but the jury may consider any of the evidence presented at trial. Of course it is the jury, not the trial court nor this Court, who resolves the weight and credibility to be accorded evidence, and the members of the panel can believe any or all of the evidence presented. Neal v. State, 451 So.2d 743, 758 (Miss. 1984).
It is for these reasons that we believe that the trial judge erred in refusing the instructions on lesser included offenses thus denying the jury the opportunity to express its approval or disapproval of Boyd's side of the case.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and BLASS, JJ., concur.
PITTMAN, J., not participating.