600 So.2d 186 (1992)
Charles TOLIVER a/k/a Charles Edward Toliver
v.
STATE of Mississippi.
No. 89-KA-0037.
Supreme Court of Mississippi.
May 6, 1992.
Robert M. Ryan, Senatobia, William J. Clayton, Batesville, for appellant.
*187 Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Charles Toliver appeals his conviction of rape in the circuit court of the First Judicial District of Panola County and sentence as an habitual offender to thirty (30) years in prison. Finding no error, we affirm.

FACTS
Mrs. D.W.,[1] an 80-plus-year-old black retired school teacher and a widow, lived alone in a rural community about three miles west of Sardis. Charles Toliver, age 23, lived with his mother, Mrs. Louise Toliver, about a fourth of a mile from Mrs. D.W.'s home. On December 3, 1987, Toliver worked in Mrs. D.W.'s yard raking leaves. He returned Saturday, December 6, asking to work some more, but she told him she was getting some school children to complete the task.
Mrs. D.W. went to bed shortly after midnight on December 16. She was awakened by a man on top of her, whom she later recognized as Toliver, telling her to hush or he would kill her. She begged him not to kill her, and testified further at trial:
A. I begged [him] not to kill me. And he had forced his penis  it was real limp; he forced it into my body and was just working away with me. He took my tongue in his mouth and almost choked me to death. It's a miracle that I'm alive. He just carried that on and on so long, and I don't see how he managed as scared as I was and as excited and nervous; it seems like it was more than a half hour, but I guess it couldn't have been. But, anyhow, he got exhausted and fell off (demonstrating breathing).
Q. How long was he actually on your body?
A. That's what I'm saying, it was a long time. To me, it seemed like a half hour, but I guess it couldn't have been that long, but how rough he was handling me. I just don't exactly know how long it could have been.
Q. Now, you say that he put his penis in your vagina?
A. Yes.
She did not know whether he had an ejaculation, but she felt a mucus-like discharge when he fell off of her. He told her she was not going to tell anybody and she promised not to do so. Toliver then told her to "fix me something to eat," and asked if she had a bathroom. He was nude. She went to the kitchen, grabbed a patty of sausage and put it in the skillet. When she did not see him, she grabbed a paper towel and wiped her private area and ran across the road to Audley Jones's house. Jones telephoned his daughter Claudette Kemmons, who lived next door.
When Mrs. Kemmons arrived, she saw Mrs. D.W. gargling and spitting up blood. She helped Mrs. D.W. into the bathroom where she cleaned her "private parts." Mrs. D.W. was clad only in her nightgown.
Mrs. D.W. was taken to the hospital where she was examined by Hilton M. Fairchild, M.D., a family practice physician. She was hysterical and told him she had been raped and choked. He found her neck bruised and swollen, which he said made it difficult for her to breathe. He swabbed her vaginal area and found no semen. He prepared a "rape kit," which was sent to the Mississippi Crime Laboratory. The results of the laboratory findings were not introduced into evidence.
It was Dr. Fairchild's professional opinion that Mrs. D.W. had been raped and choked in the process. He did not find it unusual that he found no semen, saying that in the rape cases in which he had been involved no sperm was detected in over half of them. He said her age contributed to her shock at being raped. He said that *188 the bruises and swollen neck were consistent with rape, because the injuries were confined to that area. Had she simply been beaten, bruises would have been in other places on her body as well. Asked why he was convinced she was raped, Dr. Fairchild responded:
A. That's based on a lot of years of experience, 26 years in practice, a lot of emergency rooms. And when I said I'd done 12 or 15 of these, these are of the legal type. We've been doing, you know, rape examinations for years. It's only recently that they've got, you know, so legalized with it. But back before I came here, we used to see circumstances. And the  as with anything else, it's just like if a patient came in with a, you know, certain type of cough, you know, after years you learn to recognize that cough represents something more than another cough might represent without getting into a lot of detail. The same thing with circumstances of this nature. When she came in in the condition she was in and the story that she told with the bruises on her neck and then being of sound mind even though she is in her 80's, once we got her settled down, there was absolutely nothing the matter with her mind, and I had no question but what she has been assaulted and raped, but I do not have the physical proof. And most of the rape examinations that we do usually are strictly  and probably one reason I did not get as heavy into the word "hysteria" or "nervous" is we're usually doing them for the law, and they're usually not interested in that. They're interest in what goes in this kit. So that's probably one reason that  they don't ask us exactly to divine their mental state.
Q. Based on your 26 years of experience and having come in contact with rape victims during that 26-year period of time, would you say it's pretty easy for you to spot a true rape victim?
A. Yes, sir.
Q. Would you classify her a true rape victim?
A. Yes, sir.
Mrs. D.W. remained in the hospital for about a week.
Her neighbors and her sister found her bedroom that Sunday in total disarray. The dresser drawers were out and upside down, all the contents strewn about. The pillow cases had blood on them. A screen to her dining room window had been cut open, and Mrs. D.W. was missing over $100 in cash and two checkbooks.
Toliver tried to induce his mother, Mrs. Toliver, and also his brother to go to Mrs. D.W.'s house and get his shirt.
Toliver was arrested by J.C. Sexton, deputy sheriff, at his mother's home. He was taken to the Panola County jail where Creekmoore B. Wright, highway patrol investigator, in the company of Sexton, questioned him. During the motion to suppress, Wright testified as to Toliver's statement to him:
A. Yes, sir. It was very brief. Mr. Toliver stated that he did break into the house in question and that he took from the house two checkbooks and he denied having any relationship with the victim. And at that time I took my pen out and started to take notes. Mr. Toliver made the statement that, "They taught me in Parchman to keep my mouth shut, not to sign anything when one of y'all started writing." That was the end of the interview. It was concluded at that point.
Also, during this hearing, and as to any statement Toliver made, Sexton testified: "He admitted that he cut the screen on the window and went into the house and got two checkbooks, but he didn't admit to raping her."
Before the jury Wright testified as to the statement: "Yes, Sir. It was very brief. Mr. Toliver stated that he did break into the house in question and that he took from the house two checkbooks and he *189 denied having any relationship with the victim."
Before the jury Sexton testified that Toliver "admitted cutting the screen and going through the window and stealing the checkbooks." He further testified on cross-examination that Toliver denied raping Mrs. D.W.
A three-count indictment was returned against Toliver on February 29, 1988, by the Panola County grand jury, First Judicial District. Count One charged him with burglary of Mrs. D.W.'s residence with the intent to commit the crime of rape in violation of Miss. Code Ann. § 97-17-21 (1972). Count Two charged him with rape of Mrs. D.W. in violation of Miss. Code Ann. § 97-3-65(2) (Supp. 1987), and Count Three charged him with grand larceny of a watch, $160.00 in cash and two checkbooks. The indictment also charged Toliver with being an habitual offender under Miss. Code Ann. § 99-19-81 (Supp. 1987), having been previously convicted three times for false pretenses and writing bad checks.
Toliver went to trial in September, 1988, and following presentation of the State's case-in-chief and the circuit judge's overruling his motion for directed verdicts of acquittal, he pleaded guilty to Counts One and Three.
The defense offered no witnesses, and the jury returned a verdict of guilty on Count Two, but could not agree on the punishment.
The circuit judge sentenced Toliver to fifteen years imprisonment for Count One, the burglary; five years for Count Three, the larceny; and thirty years for Count Two, the rape count; all sentences to run consecutively; and as an habitual offender under Miss. Code Ann. § 99-19-81, without parole or reduction in sentence.
Toliver has appealed.

LAW

I. INSTRUCTIONS
Toliver assigns as error the court's refusal to grant him Instructions D-1, D-2 and D-4:
D-1
If you find that the state has failed to prove any one of the essential elements of the crime of rape, you must find the defendant not guilty of such crime and you will proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of simple assault.
D-2
If the evidence warrants it, you may find the defendant guilty of a crime lesser than rape. However, notwithstanding this right, it is your duty to accept the law as given to you by the court, and if the facts and the law warrant a conviction of the crime of rape, then it is your duty to make such finding uninfluenced by your power to find a lesser offence [sic]. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but does justify a verdict for the lesser crime.
D-4
If you find from the evidence in this case beyond a reasonable doubt that the defendant purposely, knowingly or recklessly caused bodily injury to [Mrs. D.W.], then you shall find the defendant guilty of simple assault.
If the state has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.
In the one-third of a page he uses to support this argument, his only reference to the record is the following: "As stated, the proof reflected that Dr. Fairchild `questioned' the rape incident. (R. 257) There was no semen or scientific proof but bruises on the victim's neck." Appellant's Brief, p. 6.
Toliver ignores the instructions which were granted. First, the court's:

*190 C-3
The Court instructs the Jury that if the Jury, from all the evidence in this case, or lack of evidence, has a reasonable doubt in their mind as to the guilt of the Defendant, then it is your sworn duty to acquit this Defendant.
C-4
The Court instructs the Jury that it is just as much your duty under the law and upon your oaths as jurors to turn an innocent man loose by your verdict of Not Guilty as it is for you to convict a guilty man.
C-7
The Court instructs the Jury that it is the duty of each and every member of the Jury in this case to decide the issues presented for himself or herself, and if, after a careful consideration of all the evidence in the case and the instructions of the Court on the law and free consultation with his or her fellows, there is any single juror who has a reasonable doubt of the Defendant's guilt, it is his or her duty under this oath as a juror to stand by his or her conviction and favorable to a finding of Not Guilty. He or she should never yield his or her conviction simply because every other member of the Jury may disagree with him or her.
C-8
The Court instructs the Jury that the Defendant at the outset of this trial is presumed to be an innocent man. He is not required to prove himself innocent, or to put in any evidence at all upon the subject. In considering the testimony in the case, you must look at the testimony and view it in the light of that presumption which the law clothes the Defendant with, that he is innocent; and it is a presumption that abides with him throughout the trial of the case until the evidence convinces each and every one of you to the contrary beyond a reasonable doubt of guilt.
C-9
The Court instructs the Jury that the indictment in this case is not evidence or proof, and you are not to presume anything from the indictment, but you are to presume that the Defendant is Not Guilty unless and until he is proven guilty beyond a reasonable doubt.
Then follows State's Instruction S-2:
In Count 2, the Defendant, CHARLES TOLIVER a/k/a CHARLES EDWARD TOLIVER has been charged with the crime of Rape.
If you find from the evidence in this case beyond a reasonable doubt that:
1.) [Mrs. D.W.] was a female of the age of fourteen (14) years or upward; and
2.) The Defendant had sexual intercourse with [Mrs. D.W.] by actual penetration of her private parts against her will and without her consent by the use of force,
then you shall find the Defendant, CHARLES TOLIVER, guilty of Rape in Count 2.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty in Count 2. [Emphasis added]
Finally, is defense Instruction D-8:
D-8
It is not sufficient for the state to prove part of the constituent elements of the alleged offenses, but it is necessary for the state to prove all of the elements of the alleged offenses before you can find the defendant guilty, and no matter how much proof the state may have presented as to some of the elements of the offense, each and every constituent element of the offense must be proven, and unless you believe beyond a reasonable doubt that the defendant is guilty of all of the elements of the alleged offense, then it is your sworn duty to find the defendant not guilty of such offense.
At least six times in the court's own instructions, the jury is told it must believe beyond a reasonable doubt that Toliver is *191 guilty before it is authorized to return a verdict of guilty, and unless it does so find it is the jury's sworn duty to find him not guilty.
State's Instruction S-2 tells the jurors that they must believe beyond a reasonable doubt that Toliver "had sexual intercourse with [Mrs. D.W.] by actual penetration of her private parts against her will and without her consent by the use of force."
And, the jury is further instructed that if the State fails to prove this, the jury shall return a verdict of not guilty. Finally, Toliver's Instruction D-8 tells the jurors that it is necessary for the State to prove "all of the elements" of the offense, and no matter how much proof may have been presented as to some, "each and every constituent element of the offense must be proven," and unless they "believe beyond a reasonable doubt that the defendant is guilty of all of the elements" of the offense, it is their sworn duty to find him not guilty. (Emphasis added)
The jurors were clearly told by these instructions that even though they might believe Toliver choked and bruised Mrs. D.W., unless they also believed he actually sexually penetrated her against her will, it was their sworn duty to return a verdict of not guilty.
The refused instructions of which Toliver complains are actually in conflict with the instructions the court granted. The granted instructions unequivocally instructed the jury that if it failed to find any of the essential ingredients of rape, insofar as that jury was concerned on the issue before it, he was to walk out a free man, not guilty. The instructions requested by Toliver would tell the jurors that even though they found him not guilty of rape, their job was not then finished, but they were under a further duty to go ahead and consider whether or not he was guilty of another crime.
We can discern no prejudice to Toliver if somehow there had been some evidence in this case to support that he was indeed guilty of simple assault but not rape. The jury was clearly told that unless it found every essential ingredient of rape, he was to be found not guilty. How was he harmed by a denial of an instruction which told the jury it was not to cease deliberations when it found him not guilty of the only crime with which he was charged and turn him loose, but instead was to continue its deliberations and see if he was guilty of simple assault?
Furthermore, there is no evidence in this record that Toliver choked Mrs. D.W. but did not at the same time rape her.
Only two people on earth know for certain whether she was raped by him on December 6, 1987. She testified clearly, graphically and positively that he did in fact penetrate her sexually against her will.
Dr. Fairchild testified that she reported being raped to him and that in his opinion she was raped and choked in the process. He based this upon her hysterical condition and the bruises and swelling which were confined to her neck area. True, he found no semen, but he testified that in over half of the rape cases he had encountered in his practice, no semen was found. The absence of semen could also be accounted for by Mrs. D.W. having used her neighbor's bathroom to clean herself.
Toliver obviously knew Mrs. D.W. lived alone. He pleaded guilty to burglarizing her home with the intent to commit the crime of rape.
The only thing in this record upon which to even surmise he did something other than rape her was his denial during questioning by Wright that he raped her. Yet, he denied doing anything during this questioning except tearing the screen, entering the home and taking two checkbooks. While this denial encompassed rape, it also denied anything other than breaking into her home and taking the checkbooks.
This Court has considered lesser included offense instructions in numerous cases. See Boyd v. State, 557 So.2d 1178 (Miss. 1989); Jackson v. State, 551 So.2d 132 (Miss. 1989); McGowan v. State, 541 So.2d 1027 (Miss. 1989); Whitehurst v. State, 540 So.2d 1319, 1327 (Miss. 1989); Griffin v. State, 540 So.2d 17 (Miss. 1989); Mease v. *192 State, 539 So.2d 1324 (Miss. 1989); Gangl v. State, 539 So.2d 132 (Miss. 1989); Rowland v. State, 531 So.2d 627 (Miss. 1988); Davis v. State, 530 So.2d 694 (Miss. 1988); Childs v. State, 521 So.2d 882 (Miss. 1988); Craig v. State, 520 So.2d 487 (Miss. 1988); Armstead v. State, 503 So.2d 281 (Miss. 1987); Harper v. State, 478 So.2d 1017 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 799-801 (Miss. 1984).
In Mease v. State, the accused was charged with capital murder of a sheriff, and did not testify. Yet, a deputy sheriff did testify that Mease did not fire his weapon until the sheriff struck him on the head with his .357 Magnum, and expert witnesses testified that this could have created a reflexive action causing Mease to fire his pistol. This warranted a lesser included offense instruction of manslaughter under Miss. Code Ann. § 97-3-27 (Supp. 1972). 539 So.2d at 1334; Hawkins, P.J., specially concurring at 1337-1338.
The jury was clearly and plainly instructed as to each of the essential ingredients of the crime charged, and was clearly and plainly told that unless it found Toliver guilty of every one of those essential ingredients, it must under its oath return a verdict of not guilty and discharge him. To have been entitled to a lesser included offense instruction, it was incumbent upon Toliver to point to some evidence in the record from which a jury could, other than by mere surmise, find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser included offense. Whitehurst v. State, 540 So.2d at 1327; Harper v. State, 478 So.2d at 1021; Fairchild v. State, 459 So.2d at 799.

II. IMPROPER ARGUMENT
Counsel complains of improper closing argument by the prosecution. At Toliver's trial he did not make a single objection to the prosecuting attorney's argument. Furthermore, his motion for a new trial makes no complaint of the State's closing argument. We have carefully read the State's closing argument and see no reason in this case to depart from our well-settled rule not to consider such an assignment where no objection was made at trial. Berry v. State, 575 So.2d 1, 9 (Miss. 1990); Cole v. State, 525 So.2d 365, 369 (Miss. 1987).
Toliver's remaining assignments of error are without merit and do not warrant discussion.
Because of the grave nature of this case and the heavy sentence imposed upon Toliver, we have given this record serious study. We find no reversible error and affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and McRAE, JJ., concur.
BANKS, J., concurs with separate written opinion joined by PITTMAN, J.
BANKS, Justice, concurring:
I concur in the result reached by the majority here but I am compelled to write separately to express the opinion that the failure to give the simple assault instruction here was error but in the posture of this case, harmless.
Without doubt simple assault is a lesser included offense within the crime of rape. See, e.g. Boyd v. State, 557 So.2d 1178 (Miss. 1989). We have held that, at a defendant's request, he is entitled to an instruction that would allow a jury to find guilt of a lesser crime which could be found to have been committed on the evidence before the jury. Gangl v. State, 539 So.2d 132 (Miss. 1989). In other words, a defendant may be entitled to have the jury relieved of the subtle pressure of having to convict on the greater offense or return a verdict of not guilty where the evidence indicates guilt of something but not necessarily the crime charged.
The majority states that there is no evidence which would allow a reasonable jury to conclude that the defendant was not guilty of rape but guilty of assault. The fact is, however, that reasonable doubt may arise from the evidence or the lack of *193 evidence. Here there was no objective evidence of penetration. The jury could have formed a reasonable doubt as to whether penetration occurred. Without penetration there is no rape. Defendant was entitled to an assault instruction.
I find the error in failing to give the instruction harmless however, because of a combination of circumstances. On the evidence the chance of a reasonable juror finding lack of penetration based on the lack of objective evidence was remote. Additionally, this was a multi-count indictment. The jury did not face the prospect of finding the defendant guilty of rape or not guilty on any charge. These two circumstances combined render the error harmless.
PITTMAN, J., joins this concurring opinion.
NOTES
[1] Fictitious initials have been used to protect the identity of the victim.