# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-01312-SCT

*PATRICK N. WARREN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/92 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RAYMOND L. WONG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  W. GLENN WATTS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 2/26/98 |
| MOTION FOR REHEARING FILED: | 3/11/98 |
| MANDATE ISSUED: | 4/30/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case, we are presented with claims that the appellant was put in double jeopardy, that the trial court erred in denying a motion for directed verdict, that evidence of other crimes and acts was improperly admitted, that a flight instruction was not warranted, and that the trial court abused its discretion in refusing to give jury instructions on the lesser included offense of trespassing and identification. Because we conclude that the trial court committed reversible error in refusing to give the requested lesser included offense and identification instructions, we reverse.

### I.

¶2. In cause number 7514, a grand jury returned an indictment against the appellant, Patrick N. Warren, charging him with the crime of voyeurism committed on or about February 20, 1992. A jury was selected and the trial commenced. However, during the State's direct examination of the voyeurism victim, Katray James, counsel for Warren objected to the line of questioning. A conference followed in the judge's chambers, where it was discussed and eventually conceded by the State's prosecutor that James' testimony concerning the incident on February 20 did not support the elements set out in the indictment.

¶3. In particular, the indictment alleged that Warren unlawfully peeped through a window of James' house with a lewd, licentious and indecent purpose. However, James' testimony about the February 20 incident merely revealed that Warren threatened the lives of James and her children on this particular night, and not that Warren had a lewd, licentious, or indecent purpose for being at her home. As such, the State aborted the trial.

¶4. Subsequently however, Warren was re-indicted in cause number 7611 on two counts of voyeurism. Count I of the indictment alleged that he committed the crime of voyeurism against James on or about February 11, 1992. Count II of the indictment alleged that he committed the same offense against James on or about February 20, 1992 (the same incident that had been charged in the aborted trial).

¶5. Warren filed a "Plea of Former Jeopardy" in which he argued that subjecting him to *any* trial for the offense of voyeurism would constitute double jeopardy in light of the previously aborted trial. The trial court agreed in part, ruling that Count II, charging Warren with the February 20 voyeurism offense, constituted double jeopardy. However, the trial court held that the February 11 voyeurism incident was not barred by double jeopardy protections.

¶6. At the subsequent trial, James testified that on February 11, 1992, at approximately 11:00 p.m., a man banged on her window and threatened to kill her and her children unless she did as he instructed. According to James, the man instructed her to go into her bedroom, pull back her curtains, take off her clothes, and "get off on [her]self." James further testified that the man harassed and threatened her and her children for approximately two hours on the night of February 11, 1992. She identified Warren in court as the "peeping tom." Also over defense counsel's objection, James told the jury about other incidents concerning Warren which occurred on February 17 and 20.[1] The trial court ruled that these incidents were admissible under Miss. R. Evid. 404(b) to show identity.

¶7. Warren testified in his own defense. He denied ever having gone to James' house and threatening her or ordering her to undress for his licentious purposes. In fact, Warren claimed that during the "peeping tom" incidents he was in McComb, Mississippi visiting his grandmother; however, he offered no corroboration of this claim.

¶8. Both sides rested and closed following Warren's testimony. During the jury instruction conference, counsel for Warren requested an instruction on the law of identification and an instruction on the lesser included offense of trespassing. The trial court denied both requests.

¶9. Based upon the evidence presented, the jury found Warren guilty as charged, and the trial court sentenced him to the maximum allowed for the crime, five years imprisonment. Warren's attorney filed a motion for judgment notwithstanding the verdict and, alternatively, for a new trial. The motion was denied. Aggrieved, Warren appeals to this Court.

## II.

¶10. In his first assignment of error, Warren claims that he was charged in the first and second indictment with the same offense (voyeurism) which has the same elements. He argues that under *Blockburger v. United States*, 284 U.S. 299 (1932), he was subjected to double jeopardy and as such

his conviction cannot stand. He also contends that the two-count indictment was improper under *Corley v. State*, 584 So. 2d 769 (Miss. 1991), as two offenses cannot be alleged in the same indictment unless they are based on the same act or transaction.

¶11. The State responds that while Warren was indicted twice for the voyeurism that occurred on February 20, 1992, he was not *tried* twice, since the first trial was aborted by the State and the February 20 voyeurism charge was stricken from the second trial by the trial court. Thus, the State asserts that since the February 11 voyeurism incident was not alleged in the initial trial, the instant case is not violative of double jeopardy.

¶12. The State's position is well taken. There is no double jeopardy bar to the prosecution and conviction of Warren for the February 11 voyeurism incident in the present case. Initially, there were two separate and distinct offenses charged in a single indictment. The lower court's dismissal of one of those counts on grounds of double jeopardy, however, cured any error that might have arisen from the multi-count indictment. Moreover, because of the lower court's dismissal of the February 20 voyeurism count, this was not a case of "separate and distinct offenses. . . tried in the same criminal proceeding." *Corley*, 584 So. 2d at 772. Thus, this assignment of error is without merit.

### III.

¶13. Next, Warren contends that the trial court erred in denying his motion for directed verdict lodged at the close of the State's case-in-chief. The State argues that there was ample evidence to support the trial court's denial of Warren's directed verdict motion.

¶14. "It is elemental that after a motion for directed verdict is overruled at the conclusion of the State's evidence and the appellant proceeds to introduce evidence in his own behalf, the point is waived. In order to preserve it, the appellant must renew his motion for a directed verdict at the conclusion of all the evidence." *Wright v. State*, 540 So. 2d 1, 3 (Miss. 1989) (quoting *Harris v. State*, 413 So. 2d 1016, 1018 (Miss. 1982)); *State v. Russell*, 358 So. 2d 409, 413 (Miss. 1978).

¶15. Here, Warren moved for a directed verdict at the close of the State's case-in-chief. He then presented evidence in his own behalf, but did not renew his motion for directed verdict at the close of all the evidence. Thus, he waived this assignment of error, and it is therefore not properly before this Court. Notwithstanding the bar, however, we conclude that the evidence and the reasonable inferences from the evidence supported the jury's verdict of guilt beyond a reasonable doubt and that the trial court correctly denied Warren's motion for directed verdict. *See White v. State*, 566 So. 2d 1256, 1259 (Miss. 1990).

### IV.

¶16. Warren further asserts that the trial court erred in allowing James to testify that he watched her house from a nearby baseball field on February 17 and threatened her and her children while peeping into her home on February 20. The trial court, over the objection of defense counsel, allowed this testimony for purposes of identity. Nevertheless, Warren argues that because James testified that she identified him from the February 11 incident, the other incidents were unnecessary and served only to unfairly prejudice him when they were admitted into evidence. The State responds that these incidents were properly admitted into evidence under Miss. R. Evid. 404(b) to show Warren's

identity, motive, and plan.

¶17. Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character and that the person acted in conformity with that character. Such evidence is admissible, however, to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Miss. R. Evid. 404(b); *Hewlett v. State*, 607 So. 2d 1097, 1103 (Miss. 1992); *Parks v. State*, 522 So. 2d 755, 756 (Miss. 1988).

¶18. After a thorough review of the record, we find that James' testimony regarding her identification of Warren based upon the February 11 voyeurism offense was anything but conclusive. To the contrary, her testimony concerning when she saw Warren's face is confusing and contains several discrepancies. Clearly it was important that the February 11 identification be corroborated and bolstered by evidence of other experiences with the accused.

¶19. Thus, we conclude that it was not error for the trial court to allow James to also testify about the incidents that occurred on February 17 and February 20 to corroborate her identification of Warren as the "peeping tom." *See Henry v. State*, 209 So. 2d 614, 617 (Miss. 1968) (introduction of corroborating testimony where the collateral evidence is on a crucial issue in the trial of the case is permissible). Moreover, the plain wording of Rule 404(b) indicates that other crimes, wrongs, or *acts* may be admitted in evidence to show several things, including identity.

¶20. Additionally, James testified that on February 20 Warren said to her, "I'm back," suggesting that he had previously been to her house (inferentially on February 11). Thus, the admission into evidence of the February 20 incident served an independently probative and permissible basis, i.e., it provided substantiating evidence that Warren had in fact been at James' house at a time prior to February 20, from which the jury could infer that the previous time was February 11 as asserted by the victim. This assignment of error has no merit.

## V.

¶21. In *Pannell v. State*, 455 So. 2d 785, 788 (Miss. 1984), this Court concluded that a flight instruction should only be given in cases where the defendant's flight (1) is unexplained and (2) where the circumstance of that flight has considerable probative value. *See also Fuselier v. State*, 468 So. 2d 45, 56-57 (Miss. 1985) (instruction that flight may be considered as a circumstance of guilt or guilty knowledge is appropriate where the flight is unexplained and somehow probative of guilt or guilty knowledge). From *Pannell*, a two-prong test has evolved which looks at whether the flight was explained, and if not, whether the flight has probative value. *Clark v. State*, 503 So. 2d 277, 279-80 (Miss. 1987). If it is unexplained and probative of guilt, then a trial court commits no error in granting a requested flight instruction.

¶22. Here, Officer Little testified that on February 20, 1992, he responded to James' call to the police department in which she described what the "peeping tom" was wearing: a beige or tan-colored coat with a hood. When he pulled up to James' house, Officer Little saw Warren, who was wearing a beige coat with a hood attached to it. Little, who knew Warren prior to this confrontation, asked him if he would return to James' house for questioning regarding the "peeping tom" complaint. Warren declined the request by fleeing. Moreover, during his testimony, Warren claimed that he was not even at James' house during the "peeping tom" incidents. He also stated that Officer Little did not know

him and vice versa and that Officer Little did not see him or talk to him on February 20.

¶23. It follows that Warren did not explain or even acknowledge his fleeing from Officer Little on February 20. Thus, the first prong of the *Pannell* test is satisfied. The record is sufficient to meet the second prong of the *Pannell* test as well. In this case, the circumstance of Warren's flight from the officer certainly had considerable probative value regarding the primary issue of guilt of the crime alleged. Warren's unexplained flight, along with the other record evidence, tends to show a conscious sense of guilt when confronted by Officer Little and a desire to avoid punishment. Thus, we conclude that the trial court properly granted the flight instruction.

## VI.

¶24. Warren next contends that the trial court erred in not granting his request for a lesser included instruction on the crime of trespass. The State argues that there was no basis in the record for Warren to have claimed that he was merely guilty of trespassing in light of Warren's claim that he was not even on the victim's property.

¶25. Contrary to the State's position, we conclude that it was reversible error to reject Warren's request for a lesser included instruction on trespassing. Our law is that the burden of proof is upon the State to prove each element of the crime. *See e.g., Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). If it fails in so doing, the defendant is entitled to an acquittal on the offense charged even if the elements proven constitute guilt of a lesser offense. *Toliver v. State*, 600 So. 2d 186 (Miss. 1992). A jury is entitled to believe or disbelieve witnesses in whole or in part. *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995). Moreover, in *Perry v. State*, 637 So. 2d 871 (Miss. 1994), we restated the well-established rule governing the granting of lesser included offense instructions:

> Only if this Court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict. . .the defendant of [the lesser included offense], can it be said that the refusal of the lesser-included offense instruction was proper.

*Id.* at 877 (quoting *Harbin v. State*, 478 So. 2d 796, 799 (Miss. 1985)); *Lee v. State*, 469 So. 2d 1225, 1230-31 (Miss. 1985).

¶26. Accordingly, Warren is guilty of voyeurism only if the jury believed all of what James had to say including her testimony suggesting Warren's lewd purpose for being on her property and looking through her window. Likewise, he is guilty only of trespassing if the jury decided to believe everything that James stated except that portion of her testimony suggesting Warren's lewd purpose. Thus, contrary to the State's contention, there was evidence to support the lesser included instruction on trespassing, and the instruction should have been given. The denial of the requested instruction constituted reversible error.

## VIII.

¶27. Warren also assigns as error the denial of instructions speaking to identification evidence. At

trial, he offered instructions that directed jurors to consider factors impacting upon the accuracy of an identification. The State responds that the requested instructions were not necessary and improper because they were repetitive and constituted a comment upon the weight of the evidence.

¶28. In *Davis v. State*, 568 So. 2d 277, 280 (Miss. 1990), we approved the very identification instruction proffered by Warren. We did not reverse in that case because we found that a sufficient portion of the instruction was given, rendering the erroneous striking of the remainder of the instruction harmless under the circumstances. In the instant case, however, none of the identification instruction was given. This failure to instruct the jury on the law of identification was error as this case turned on the identification of Warren by a single person. Therefore, the lower court's refusal to grant the instruction on identification was reversible error.

¶29. For the foregoing reasons, we reverse the judgment of the circuit court and remand this matter to that court for further proceedings.

¶30. **REVERSED AND REMANDED.**

**PRATHER, C.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. PITTMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., JOINS THIS OPINION IN PART. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

### PITTMAN, PRESIDING JUSTICE, DISSENTING:

¶31. Because I believe the issues presented to this Court establish a clear violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution warranting the dismissal with prejudice of any charges currently pending against this defendant thus calling for this case to be reversed and rendered, I respectfully dissent.

¶32. Because I agree with the majority's account of the facts leading up to Warren's appeal, I will begin with an analysis of the issues presented.

> **I. WHETHER WARREN WAS TRIED IN THE CASE *SUB JUDICE* IN VIOLATION OF HIS CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

¶33. The Double Jeopardy clause of the Fifth Amendment reads as follows, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This proscription "has been applied to the states through the Due Process Clause of the Fourteenth Amendment and this application must be made retroactively." *McNeal v. Hollowell*, 481 F.2d 1145, 1149 (5th Cir. 1973) (citations omitted), *cert. denied*, 415 U.S. 951 (1974).

¶34. Double jeopardy protection further applies to successive prosecutions for the same criminal offense. *See United States v. Dixon, 509 U.S. 688 (1993)*. The Supreme Court has also held that:

In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. . . . The same elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*Dixon*, 509 U.S. at 696 (citations omitted). Most recently, the Court recognized that in *Grady v. Corbin*, 495 U.S. 508 (1990), it had adopted an additional test that "a subsequent prosecution must satisfy a 'same-conduct' test to avoid the double jeopardy bar." *Id.* at 697. However, the Court concluded that "*Grady* must be overruled. . . . The 'same conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Dixon*, 509 U.S. at 704. Thus, as the Supreme Court has articulated, the rule is again the "Blockburger" or "same-elements" test.

¶35. In the case *sub judice*, Warren was first indicted on one count of voyeurism occurring on or about February 20, 1992. This count was *nolle prosequi* by an Order dated June 10, 1992. Subsequently, Warren was again indicted by the grand jury. This time it was for two counts of voyeurism, one occurring on or about February 11th, 1992, and the other occurring on or about February 20th, 1992. The second count was dismissed at the second trial upon a motion of double jeopardy by the defense. The question now becomes whether the first count charging voyeurism on February 11th should also be dismissed due to the double jeopardy issues raised by Warren.

¶36. Applying the "Blockburger" test, it is evident that the two offenses have the same elements. The first indictment read in pertinent part as follows:

> Patrick N. Warren late of the County and Judicial District aforesaid, on or about the 20th day of February, in the year of our Lord, 1992, in the County, Judicial District and State aforesaid, and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously enter upon the real property of Katray James and did then and there wilfully, unlawfully and feloniously pry or peep through a window of the Katray James' dwelling house for the lewd, licentious and indecent purpose of spying on the occupants thereof.

The indictment was labeled at the top "VOYEURISM - MCA § 97-29-61." The second indictment was labeled as a multi-count indictment pursuant to Miss. Code Ann. § 99-7-2 and the statutory label at the top was identical to the first indictment and read "VOYEURISM MCA § 97-29-61." Furthermore, Count I of the second indictment reads as follows:

> Patrick N. Warren, late of the County and Judicial District aforesaid, on or about the 11th day of February, in the year of our Lord, 1992, in the County, Judicial District and State aforesaid, and within the jurisdiction of this Court, did unlawfully, wilfully and feloniously enter upon the real property of Katray James and did then and there wilfully, unlawfully and feloniously pry or peep through a window of the Katray James' dwelling house for the lewd, licentious and indecent purpose of spying on the occupants thereof.

Count II, which was dismissed due to double jeopardy, also read verbatim except the date was the 20th of February. It is evident that the elements in the first indictment and the elements in the second

indictment are the same. The two indictments read verbatim except the second indictment added a second count and charged Warren with the crime on two separate occasions. Therefore, the State must prove exactly the same elements it was required to prove at the first trial. However, as the Eleventh Circuit has noted, this does not mean that a person cannot be tried twice if he commits two offenses under the same statute. *United States v. Maza*, 983 F.2d 1004 (11th Cir. 1993). The court succinctly summed up the problem with this situation.

> Whatever else these words [same offense] may proscribe, they surely were not intended to suggest that a person could not be "twice put in jeopardy" for the "same offence" if he commits the same offense twice. Whether a defendant has committed the same offense twice is a factual question. Therefore, for purposes of successive prosecutions, the question of whether a defendant is being put in jeopardy for the "same offence" cannot be determined solely with reference to the statutory elements of the offenses charged. Rather, **there must also be some determination that the underlying facts that gave rise to the first prosecution are, or are not the sole basis for the second.** The Supreme Court, however, has resisted acknowledging the factual element of the double jeopardy inquiry, even though many of its opinions clearly rely, for their applicability to successive prosecutions, on an assumption about the facts.

*Maza*, 983 F.2d at 1011(emphasis added). The question becomes, then, whether or not the defendant committed two offenses of the same crime or merely one offense spread over two separate nights. In the case at bar, the underlying facts that gave rise to the first prosecution are the sole basis for the second prosecution. At this point it is helpful to look at the underlying facts of both prosecutions.

¶37. The first prosecution was based upon the acts occurring on or about February 20, 1992. However, Katray James had previously complained of someone "peeping" in her window and making lewd comments, and threatening her children prior to the incident on the 20th. These allegations were based upon events occurring on the night of February 11, 1992. On a Thursday night, February 20, 1992, the person returned and started beating on James' window. The person threatened James by saying, "Bitch, if you don't do what I tell you to do, I am going to kill you and your kids." James' testified that it was the same voice as the one from February 11, 1992. James tried to see the face of the person making the threats. She was able to see him this time and testified that he had on a tan coat with a hood. During the second trial, James' identified Warren as the person outside her house that night. James grabbed her children, fled the house, and went to her neighbor's to call the police.

¶38. During the first trial, the State attempted to offer evidence from the night of February 11th to show the licentious desire element of voyeurism. When Warren's counsel objected, the attorneys and judge had a conference back in chambers. At this time the court and the parties thoroughly discussed what was wrong with the State's position in this particular trial. The defense attorney, in attempting to keep the testimony about the night of the 11th excluded, pointed out the deficiencies in the prosecution's case. During this discussion, the judge stated that "[i]f [Warren] was charged with licentious desire at that time [February 11th], [the State] could come back and show this night [February 20th] for identity." This is exactly what the State did in the second trial. It indicted Warren for the events of February 11th and then attempted to introduce evidence of the 20th for identity purposes. The deficiencies in the trial strategy of the prosecution having been shown in the first trial, it violates the basic principles of double jeopardy to allow the State to try the defendant on the same offense again. The prosecution cannot be allowed the opportunity to "hon[e] its trial strategies and

perfect[] its evidence through successive attempts at conviction." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982). The two counts are for the same offense and cannot be retried once jeopardy has attached.

¶39. The only crime committed by Warren was on the night of February 11th. On February 11, 1992, James returned to her home at 1015 East Parkway, in Cleveland, from a trip to Wal-Mart between 9:30 p.m. and 10:00 p.m. James and her two sons went to bed shortly thereafter. Between 10:30 p.m. and 11:00 p.m. James heard someone beating on her door. When she went to the door, no one was there. She went back to bed and again heard the beating on her door. James went to check and again saw no one at her door. As she turned to go back down the hall, she heard a voice coming from her living room window. The person told her not to go back down the hall to the bedroom. Ignoring this admonition, she turned around to go down the hall again and the person again told her not to go down the hall. At this time James turned around and went back and stood where she didn't think the person could see her. She had not seen anyone, but continued to talk with this voyeur. He continued to talk to her, telling her not to go down the hall. She asked him who he was and he said she didn't know him. James asked him why he was messing with her and he answered because she "wouldn't give him the time of day." The voyeur told James that if she did not do what he said then he would kill her and her children.

¶40. James then testified that the person told her to go in her room, pull her curtains back, take off all her clothes. The person then gave her sexual instructions. James and the person kept talking and he told her she was wasting his time and again threatened her if she did not do what he requested. James then went to her bedroom where there was a light on and pulled back her window curtains. She testified that she did not see who it was, but did see a shadow move toward the window. At this time, the voyeur again threatened James. Then someone knocked on James' door. As she turned to answer the door the person again screamed at her and threatened to kill her and her sons if she answered the door. At first James did not move, but then realized she had to do something or this would go on all night. She went to the door and found a friend of hers coming to check on her. Finally, James went to a neighbor's home and used the telephone to summon the police.

¶41. This evidence and the facts support a conviction of voyeurism because the lewd and licentious element is present. When Warren told James to take off all her clothes, etc., then the crime had been completed. However, no such crime occurred on February 20th. In the first trial for the 20th, the prosecution essentially had the wrong date. Instead of amending the indictment, they chose to *nolle prosequi* the indictment and start over. The record reflects that the prosecution began going into incidents that occurred on February 11th when the indictment was only for February 20th. The state realized that it could not make its case upon the events of one night and attempted to re-indict on the events of both nights to again try and convict Warren of the one crime of voyeurism he committed. When a prosecutor fails to convict on the first try he does not get a second chance.

¶42. If the prosecution had two separate indictments, one for the 11th and one for the 20th, then the outcome may be different. However, this Court is not faced with that situation and must determine the outcome of this case on the facts presented to us. Warren was charged with two counts in one indictment. In allowing multi-count indictments this Court has said that:

> the offenses must be based on the same act or transaction, or be based on two or more acts or transactions, connected together or constituting parts of a common scheme or plan. . . . We

have been, and remain, unwilling to allow **separate and distinct offenses to be tried in the same criminal proceeding**.

*Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991)(emphasis added) (citations omitted). Thus, under our ruling in *Corley* regarding multi-count indictments, in order for the prosecution to properly join two counts in one indictment, the two counts must be one offense. If it was a separate and distinct offense, then it would have to be tried in a different criminal proceeding. Thus, Warren was twice placed in jeopardy and the judgment of conviction should be reversed and the defendant discharged.

## CONCLUSION

¶43. Warren committed one act of voyeurism that could be proved and was subsequently tried for the same crime twice. This is prohibited by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Thus, Warren must be discharged and the charges against him dismissed with prejudice. Because I believe this case should be reversed and rendered, I must dissent.

**SULLIVAN, P.J., JOINS THIS OPINION. McRAE, J., JOINS THIS OPINION IN PART.**

### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶44. I agree with the majority's decision to reverse this case. Nevertheless, I must part with the majority's opinion and rationale on two bases: (1) James should not have been allowed to testify regarding an alleged incident with Warren on February 20, 1992; and (2) Warren should not be precluded, based on a procedural bar, from arguing that the trial court erred in denying his motion for a directed verdict.

### I.

¶45. Warren was originally charged with two counts of voyeurism, for incidents on February 11 and February 20, 1992. However, the count based on the February 20, 1992 incident was dismissed by the trial court because it was barred by double jeopardy. The State proceeded to trial only on the issue of February 11 incident. Nonetheless, the trial court allowed presentation of all evidence regarding the February 20 incident to corroborate a witness's testimony about the February 11 incident.

¶46. The problem is that the trial court allowed evidence of the February 20 incident to go to the jury on the case in chief, and the jury in effect appears to have convicted Warren for the uncharged February 20 incident. The trial court gave a fleeting instruction not based on the February 11 incident for which Warren was charged and convicted, but based on the February 20 incident, for which a voyeurism charge had already been dismissed and for which an instruction could not be given. In no way did the February 20 incident relate to the February 11 charge. Evidence of the February 20 incident should not have been allowed.

### II.

¶47. The second and more important issue here deals with the majority's conclusion that Warren's

directed verdict issue is not properly before this Court. This Court has consistently decided that in civil cases, a party is not necessarily required to make a motion for a directed verdict if the party makes a motion for a new trial or for judgment notwithstanding the verdict, so long as the trial court has a chance to review the error that is going to be raised in this Court. ***New Hampshire Ins. Co. v. Sid Smith & Assoc., Inc.***, 610 So. 2d 340, 344 (Miss. 1992). *See* Rule 10.05, Uniform Rules of Circuit and County Practice (1995). Therefore, under ***New Hampshire Insurance***, in a civil case, if a party moves for a post-trial judgment in its favor (whether or not the party moved for a directed verdict), and the court denies such motion, the moving party may still appeal that denial. The allegation of trial court error has been preserved by the singular motion. Why is it that when someone's liberty is at stake that the same rule does not apply?

¶48. It took ***New Hampshire Insurance*** for this Court to finally adjust this rule in civil cases. We have not gone forward and applied the rule to criminal cases, but we should, beginning with the instant case. The instant case is even factually stronger than ***New Hampshire Insurance***, because in that case, the insurance company only moved for judgment notwithstanding the verdict, which this Court deemed sufficient to preserve error. Here, not only did Warren raise the question of sufficiency of evidence in his motion for new trial, but also he moved for a directed verdict at the close of the State's case in chief. The trial court had ample opportunity both from Warren's motion for a directed verdict at the close of the State's case-in-chief and his motion for new trial to address whether there was sufficient evidence to support a verdict against him. The trial court was in no way ambushed. Further, it appears that there was not even enough evidence to withstand Warren's initial motion for directed verdict.

> Once a motion for directed verdict is raised, and that motion is denied, the grounds for appeal are therefore preserved. It is highly perceivable that a trial court could erroneously fail to direct a verdict in a defendant's favor, when the State has failed to prove every element of a crime beyond a reasonable doubt. To not allow the defendant to appeal such a failure to grant directed verdict, especially in the criminal context, would be offensive to fundamental guarantees of a fair trial found in our state and federal constitutions.

Bounds v. State, 688 So. 2d 1362, 1374 (Miss. 1997)(McRae, J., dissenting). Accordingly, the majority should not rule that Warren's assignment of error regarding the denial of his motion for directed verdict is waived.

1. According to James, on February 17 Warren watched her home from a nearby baseball field for an extended period of time. She reported this incident to the police. Also, on February 20 Warren came to James' house, banged on her window, threatened and harassed her and her children for a very long time before she and her sons were able to escape to her neighbor's home, where she called the police. Based upon James' description of the "peeping tom," the responding officer, Reneal Little, stopped Warren--who had on a coat matching the description and who was leaving the vicinity of James' house--and asked him to return to James' house for questioning. Warren fled.